JOHN C. MANLY, Esq. (State Bar No. 149080)
VINCE W. FINALDI, Esq. (State Bar No. 238279)
ALEX E. CUNNY (State Bar No. 291567)
JANE E. REILLEY (State Bar No. 314766)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys for Plaintiff, ALEXANDRA ROSE RAISMAN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE**

ALEXANDRA ROSE RAISMAN, an individual.

Plaintiff,

v.

UNITED STATES OLYMPIC COMMITTEE, a Business Entity of form unknown; USA GYMNASTICS, an Indiana Business Entity of Form Unknown; LARRY NASSAR, an individual, STEVE PENNY, an individual, PAUL PARRILLA, an individual, and DOES 1 through 500.

Defendants.

Civil Case No. 5:18-cv-02479-BLF

[The Honorable Beth Labson Freeman]

**NOTICE OF PLAINTIFF ALEXANDRA ROSE RAISMAN'S NOTICE OF OPPOSITION AND OPPOSITION TO DEFENDANT USA GYMNASTICS' AND PAUL PARILLA'S CORRECTED MOTION TO DISMISS PURSUANT TO *FRCP* 12(b)(6) MEMORANDUM OF POINTS AND AUTHORITIES**

**Hon. Judge Beth Labson Freeman**

[Filed concurrently with Declaration of Alex E. Cunny]

Complaint filed: February 28, 2018

Judge: Honorable Beth Labson Freeman
Courtroom: 6D

///

///

///

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Alexandra Rose Raisman (the "Plaintiff") hereby files the instant Opposition to Defendant USA Gymnastics' ("USAG") and Paul Parilla's ("Parilla") Motion to Dismiss made pursuant to Federal Rule of Civil Procedure 12b(6). The present Motion should be denied, as there are colorable claims supporting each of the causes of action that USAG and Parilla seek to dismiss. Specifically, the following legal and factual reasons indicate that this Motion should be denied, outright:

1) Defendant USAG and Parilla's challenge to California *Civil Code* § 51.9 (Sexual Harassment in a Defined Relationship) fails as a matter of law, given that it ignores the theory of "ratification," which, under *C.R. v. Tenet Healthcare Corp.* (2009), 169 Cal.App.4th 1068, explicitly holds that a corporate entity can be a proper party for a § 51.9 claim and an individual such as Parilla per the explicit terms of the statute may be as well;

2) The Complaint alleges sufficient facts to support an underlying cause of action for Intentional Infliction of Emotional Distress (IIED) that can be maintained against both Defendants USAG and Parilla;

3) The claim for "Unfair Business Practices" under California *Business & Professions Code* ("BP&C") § 17200 is properly maintained, considering that representations that Nassar was a fit doctor were knowingly untrue; USAG had knowledge that Nassar chronically violated codified USAG policies by entering the rooms of little girls without supervision and withheld this from athletes and their parents. USAG never warned these minor girls (or their parents) of such risks to which they were exposed, resulting in their abuse;

4) Plaintiff's claim under Masha's Law (18 U.S.C. §2255) is proper, considering USAG's strict responsibility for Nassar's conduct under the theory articulated in *Morton v. De Oliveira* (9th Cir. 1993) 984 F.2d 289, 292. Indeed, given that USAG routinely transported the Plaintiff across the globe alongside Nassar, subjecting Plaintiff to repeated molestation, *Morton*'s reasoning should apply,

holding USAG and Parilla strictly responsible for such sexual abuse;

5) The cause of action for "Breach of Fiduciary Duty" is proper against USAG and Parilla, as Defendants were in a "special relationship" with the Plaintiff, employed her to compete for USAG, and ultimately misrepresented Nassar as being a fit and safe physician, when he clearly was not and they knew such to be the case;

6) The cause of action for Constructive Fraud (*Civil Code* § 1573) is proper against Defendants USAG and Parilla, given their inherent fiduciary relationship with Plaintiff, and these Defendants' misrepresentation regarding the danger into which the Plaintiff was routinely placed;

7) Allegations predicated on a theory of negligence *per se* are proper against USAG, via the willful inaction of its agents, who *are mandated reporters* (under California *Penal Code* § 1165.7) and thus required to report suspected child sexual abuse. Under *Searcy v. Auerbach* (9th Cir. 1992) 980 F.2d 609, a mandated reporter can be held civilly liable for its failures to report, which is precisely why USAG, through its agents, is liable under this provision;

8) The Negligent Failure to Warn, Train, or Educate cause of action is proper, as USAG had advance warning of Nassar's abusive behavior; however, Defendants USAG and Parilla did nothing to intervene or otherwise prevent further abuse of Plaintiff, even simply informing the Plaintiff (and/or her parents) of the risks posed to her by Nassar and other personal at USAG;

9) The prayer for Injunctive Relief is proper, given the applicability of *B&PC* §17200 and Injunctive Relief's status as a listed remedy under the statute;

10) Defendants USAG and Parilla engaged in "malice," "oppression," and "fraud," as alleged in Plaintiff's Complaint; thus, the claims for punitive damages are proper against both Defendant USAG and Defendant Parilla;

///

///

///

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

The present Opposition to Defendants' Motion to Dismiss is grounded in this notice, the attached Memorandum of Points and Authorities, the Declaration of Alex E. Cunny and exhibits attached thereto, the records and files in this action, and upon such further evidence and argument as may be presented prior to or at the time of hearing on the Application.

Dated: November 21, 2018

**MANLY, STEWART & FINALDI**

By: ______________________
ALEX E. CUNNY, Esq.
Attorneys of Record for Plaintiff,
ALEXANDRA ROSE RAISMAN.

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

iv
NOTICE OF PLAINTIFF ALEXANDRA ROSE RAISMAN'S OPPOSITION TO USAG'S MOTION TO DISMISS PURSUANT TO *FRCP* 12(b)(6)

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 1

A. PLANTIFF RAISMAN AND HER SEXUAL ABUSE BY LARRY NASSAR. .......... 2

B. NASSAR AND HIS HISTORY OF ABUSE OF MINORS. .......... 2

C. DEFENDANTS USAG AND PARILLA'S RELATIONSHIP WITH NASSAR. .......... 3

D. DAMAGES SUFFERED BY THE PLAINTIFF AND CAUSED BY DEFENDANTS. .......... 4

E. USAG'S CONCEALMENT OF SYSTEMIC SEXUAL ABUSE BY NASSAR. .......... 4

F. USAG AND PARILLA STANDING *IN LOCO PARENTIS* TO THE PLAINTIFF AND THEIR "SPECIAL RELATIONSHIP". .......... 5

III. ARGUMENT .......... 5

A. A MOTION TO DISMISS CAN ONLY BE GRANTED IF IT APPEARS "BEYOND DOUBT" THAT NO SET OF FACTS CAN BE ALLEGED TO STATE A CLAIM. .......... 5

B. DEFENDANTS USAG AND PARILLA WERE IN A "SPECIAL RELATIONSHIP" WITH PLAINTIFF, CONFERRING ONTO THEM A DUTY TO PROTECT PLAINTIFF FROM REASONABLE AND FORESEEABLE DANGERS. .......... 6

C. THE CAUSE OF ACTION FOR SEXUAL HARASSMENT (*C.C.* §51.9) IS PROPER AGAINST USAG AND PARILLA. .......... 6

1. The Complaint Provides Sufficient Factual Support for its Claims Against USAG and Parilla to Satisfy *Ashcroft v. Iqbal* and, *FRCP* 8. .......... 9

D. THE CAUSE OF ACTION UNDER "MASHA'S LAW" IS PROPER UNDER the HOLDING OF *MORTON v. DE OLIVEIRA* (9TH CIR. 1993) 984 F.2D 289. .......... 9

1. The Court Should Apply *Celebrity Cruises*, as USAG Transports Minors across International Boundaries, and is Responsible for their Safety While Doing So. .......... 10

2. There are Facts that Exist and can be Pled Showing that USAG's Agent, Debbie Van Horn, "Aided and Abetted" Nassar's Continued Sex Abuse. .......... 11

///

///

///

**TABLE OF CONTENTS (CONTINUED)**

E. CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) IS PROPER, VIA USAG AND PARILLA'S RECKLESS DISREGARD AND/OR EXTREME AND OUTRAGEOUS CONDUCT. ........ 12

1. USAG and Parilla's Contribution to the Sexual Abuse was Undertaken with Reckless Disregard for Minors' Safety, Independently Constituting IIED. ........ 13

2. Turning a Blind Eye and/or Allowing the Plaintiff to Endure Continued Molestation and Sexual Abuse Is Unequivocally Extreme and Outrageous. ........ 13

3. The Conduct of USAG and Parilla was "Directed At" the Plaintiff. ........ 14

F. THE *B&PC* § 17200 CAUSE OF ACTION IS PROPERLY PLED. ........ 15

1. *BP&C* § 17202 Provides for Injunctive Relief as a Remedy for "Unfair Competition," and Multiple Remedies are Available to the Plaintiff. ........ 16

G. A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS PROPER. ........ 17

H. THE CONSTRUCTIVE FRAUD CAUSE OF ACTION IS PROPER. ........ 18

I. THE NEGLIGENCE *PER SE* ALLEGATIONS ARE PROPER AGAINST USAG AND PARILLA. ........ 20

1. Plaintiff Pled Specific Facts Sufficient to Show Breach against Defendants USAG and Parilla for Negligence *Per Se*. ........ 21

J. THE NEGLIGENT FAILURE TO WARN, TRAIN, AND EDUCATE CAUSE OF ACTION IS PROPER. ........ 22

K. THE COMPLAINT ALLEGES FACTS CONSISTING OF "MALICE," "OPPRESSION," AND "FRAUD" THUS, PUNITIVE DAMAGES ARE PROPER. ........ 23

L. PLAINTIFF'S PRAYER FOR DECLARATORY RELIEF SHOULD BE MAINTAINED. ........ 25

M. IN THE ALTERNATIVE, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND THE COMPLAINT AS REQUIRED. ........ 25

IV. CONCLUSION ........ 25

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**TABLE OF AUTHORITIES**

**FEDERAL LAW**

18 U.S.C. § 2255 .......... 9,11-12

18 U.S.C. §2423 .......... 9-10

*Federal Rule of Civil Procedure* 12(b)(6) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 .......... 21

*Iqbal v. Ashcroft*
(2009), 129 U.S. 1937 .......... 9

*J. I. Case Co. v. Borak*
(1964) 377 U.S. 426 .......... 6

*American Orient Exp. Ry. Co., LLC v. Surface Transp. Bd.*
484 F.3d 554, 557 (D.C. 2007) .......... 11

*Travelers Indem. Co. v. Dammann & Co., Inc.*
594 F.3d 238 (3d Cir. 2010) .......... 25

*Dann v. Studebaker-Packard Corp.*
288 F.2d 201 (6th Cir. 1961) .......... 6

*Doe v. Celebrity Cruises, Inc.*,
394 F.3d 891 (11th Cir. 2004) .......... 10-11

*U.S. v. Frank B. Killian Co.*
10 O.O.2d 40 (6th Cir. 1959) .......... 6,9

*Johnson v. Mammoth Recreations, Inc.*
975 F.2d 604 (9th Cir. 1992) .......... 25

*Morton v. De Oliveira*
984 F.2d 289 (9th Cir. 1993) .......... 9-10

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) .......... 19

*Copeland v. Bank of America Servicing*,
2014 WL 12696534, *5 (C.D. Cal. Nov. 14, 2014) .......... 18

*Smith v. Chase Mortg. Credit Group*
653 F.Supp.2d 1035 (E.D. Cal. 2009) .......... 16

///

///

**TABLE OF AUTHORITIES (CONTINUED)**

*Isuzu Motors, Ltd.v. Consumers Union of U.S., Inc.*
12 F.Supp.2d 1034 (C.D. Cal. 1998) ........................................................................ 15

*Niece v. Sears, Roebuck & Co.*
293 F.Supp. 792 (N.D. Okla. 1968) ........................................................................ 5

*Doe v. Liberatore,*
478 F.Supp.2d 742 (M.D. Pa. 2007) ........................................................................ 12

**CALIFORNIA LAW**

*Business & Professions Code* § 17200 ........................................................................ 15,17

*Business & Professions Code* § 17202 ........................................................................ 16

*Civil Code* § 51.9 ........................................................................ 7-9

*Civil Code* § 1573 ........................................................................ 18

*Civil Code* § 3294 ........................................................................ 23-24

*Evidence Code* § 669 ........................................................................ 22

*Penal Code* § 11164 ........................................................................ 20

*Penal Code* § 11165.7 ........................................................................ 20

*Penal Code* §11166.5 ........................................................................ 20-22

*C.A. v. William S. Hart Union High School Dist.*
53 Cal.4th 861 (2012) ........................................................................ 6,9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163 (1999) ........................................................................ 16

*Cole v. Fair Oaks Fire Protection Dist.*
43 Cal.3d 148 (1987) ........................................................................ 14

*Bank of the West v. Superior Court*
2 Cal.4th 1254 (1992) ........................................................................ 16

*Christensen v. Superior Court,*
54 Cal.3d 868 (1991) ........................................................................ 12,14-15

*Taylor v. Superior Court of Los Angeles County,*
24 Cal. 3d 890 (1979) ........................................................................ 24

*Allied Grape Growers v. Bronco Wine Co.*
203 Cal.App.3d 432 (1988) ........................................................................ 16

///

**MANLY, STEWART & FINALDI**
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**TABLE OF AUTHORITIES (CONTINUED)**

*Angie M. v. Superior Court*,
37 Cal. App. 4th 1217 (1955)........ 14, 23-24

*Barbara A. v. John G.*,
145 Cal.App.3d 369 (1983)........ 18

*Blegen v. Superior Court*,
125 Cal. App. 3d 959 (1981)........ 23-24

*C.R. v. Tenet Healthcare Corp.*
169 Cal.App.4th 1094 (2009)........ ii,8

*Colgan v. Leatherman Tool Group, Inc.*
135 Cal.App.4th 663 (2006)........ 17

*Dawes v. Superior Court*,
111 Cal. App. 3d 82 (1980)........ 24

*Doe v. United States Youth Soccer Association, Inc.*
8 Cal.App.5th 1118 (2017)........ 7

*G.D. Searle & Co. v. Sup. Ct*,
49 Cal. App. 3d 22 (1975)........ 23

*James v. Herbert*,
149 Cal. App. 2d 741 (1957)........ 23

*Johnson v. County of Los Angeles*
143 Cal.App.3d 298 (1983)........ 14

*Juarez v. Boy Scouts of America, Inc.*
81 Cal.App.4th 377 (2000)........ 6-7

*KOVR-TV, Inc. v. Superior Court*
31 Cal.App.4th 1023 (1995)........ 13

*Little v. Stuyvesant Life Insurance Co.*
67 Cal.App.3d 451 (1977)........ 13

*Mesmer v. White*,
121 Cal. App. 2d 665 (1953)........ 18

*Mock v. Michigan Millers Mutual Ins. Co.*,
4 Cal. App. 4th 306 (1992)........ 23-24

*Murillo v. Rite Stuff Foods, Inc.*
65 Cal.App.4th 833 (1998)........ 8

*Olson v. Cohen*
106 Cal.App.4th 1209 (2003)........ 17

///

**TABLE OF AUTHORITIES (CONTINUED)**

*Pierce v. Lyman*,
1 Cal.App.4th 1093 (1991)........................................................................ 17

*Phyllis P. v. Superior Court*
183 Cal.App.3d 1193 (1986)...................................................................... *passim*

*Trerice v. Blue Cross of California*,
209 Cal. App. 3d 878 (1989)...................................................................... 13

*Warren v. Merrill*
143 Cal.App.4th 96 (2006)......................................................................... 19

**OTHER AUTHORITY**

*Bricks v. Metro Ambulance Service, Inc.*
177 Ga.App. 62, 69 (Ga. Ct. App. 1985) ................................................... 11

**SECONDARY SOURCES**

Black's Law Dict. (3d. Pocket Ed. 1996), p.359, col.2....................................................... 5,6,18

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises from the serial molestation, harassment, and sexual abuse of Plaintiff Alexandra Rose Raisman ("Plaintiff"), a three-time Olympic gold medalist, while competing for her country. Plaintiff endured repeated molestation by the USA Gymnastics' ("USAG") team physician, now-former Dr. Larry Nassar ("Nassar"), while Defendant Paul Parilla ("Parilla") served as the Board Chairman of USAG. During Plaintiff's participation on behalf of her country, while being flown around the world alongside Nassar by USAG, neither USAG nor its Board ever warned Plaintiff of the foreseeable dangers posed to her by Nassar, nor did they meaningfully address the systemic problem of child molestation.

As early as 1999, USAG knew about the risks posed to minors participating in the sport of gymnastics, the shortcomings of its own internal review processes for identifying and eradicating abusers given easy access to minors, and systemic problems in protecting children. Moreover, specifically to Plaintiff's abuser, USAG knew that Nassar would seclude gymnasts at campus and events, alone (in violation of USAG policy and procedure), where he had *carte blanche* permission to perform any sort of medical treatment he chose. In the case of Nassar, this included sexually abusive medical treatments in confined areas. Moreover, USAG permitted Nassar to practice medicine at the Karolyi Ranch ("the Ranch") without a Texas medical license, and in the absence of any system for monitoring USAG medical personnel, including physicians. Nassar is believed to have been censured by USAG for taking an inordinate number of photographs of minor girls, though this fact was never disclosed to Plaintiff or her parents. These facts, as further explored below, specifically and conclusively illustrate Plaintiff's Complaint is properly pleaded and that each cause of action is supported by well-pleaded facts.

## II. FACTUAL BACKGROUND

### A. PLANTIFF RAISMAN AND HER SEXUAL ABUSE BY LARRY NASSAR.

The Plaintiff attended national and international competitions on behalf of USAG in locations that include but are not limited to: Santa Clara County, California; the "Karolyi Ranch" in Huntsville, Texas; other locations across the U.S.; and elite competition sites spanning the

globe, such as Japan, Australia, the United Kingdom, and the Netherlands. Complaint ("Compl."), ¶5,37, Exhibit "1" to Declaration of Alex E. Cunny ("Cunny Decl."). These events were hosted, sanctioned, supervised, and/or endorsed by, under the supervision of, chartered, and/or under the mandate of USAG, among other defendants. *Id.* at ¶¶1,5,17-20,37,40. Plaintiff was molested by Nassar at these locations. *Id.* The molestations occurred serially, and could have been prevented if Defendants upheld their duties. *Id.* at ¶¶1-2,19-21,41,45-46.

Plaintiff was a participant, USAG member, and patient under Nassar, who operated under the direct supervision and control of Defendants USAG and Parilla. *Id.* at ¶¶1-2. Through his position as team physician, Nassar interacted with Plaintiff under the guise of providing care and treatments necessary for her to compete as an Olympian. Under these circumstances, Nassar placed his bare, ungloved hand on and in Plaintiff's unclothed groin area, on multiple occasions, in Plaintiff's assigned living quarters, without any supervision. *Id.* at ¶¶1-2,37(a)-(c). Further, NASSAR, on numerous occasions, had an erection—a bulge in his pants—while performing the treatments he claimed to be medical. *Id.* at ¶37(c). NASSAR's molestation of the Plaintiff occurred at training facilities, in hotels, in gyms, and in living quarters. *Id.* at ¶37(b).

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**B. NASSAR AND HIS HISTORY OF ABUSE OF MINORS.**

As early as 1999, USAG's Board of Directors were aware of the inadequacies of USAG safety policies and procedures, as detailed by a letter to the USOC by then-USAG President Bob Colarossi. Compl. at ¶44, Ex. "A" to Compl. He noted that the safety procedures followed by USAG were part a "fundamentally flawed process" amidst an "apparent indifference to the welfare of young children manifest in the Committee's actions." *Id.*, Ex. "A" to Compl. as the Letter from Robert Colarossi to USOC. Defendants knew of, or should have known of, Nassar's propensity and disposition to engage in sexual misconduct with minors before he sexually abused Plaintiff, and knew of the probability that Nassar would molest minor athletes with whom he came into contact (including taking excessive photographs of young girls). *Id.* at ¶¶45,47-48. Moreover, Plaintiff alleges that Nassar was repeatedly censured, disciplined, and/or reprimanded by Defendants, for taking an inordinate number of photographs of young girls, who were

///

gymnasts. *Id.* at ¶48. This conduct wasn't further investigated or reported to law enforcement, and was never communicated to Plaintiff or her family. *Id.*

**C. <u>DEFENDANTS USAG AND PARILLA'S RELATIONSHIP WITH NASSAR</u>.**

Plaintiff is informed and alleges that USAG hired Nassar onto its staff as a trainer in 1986, followed by National Medical Director and the National Team Physician for the women's gymnastics team in 1996. <u>Compl.</u>, ¶24, Ex. "1". Nassar was also responsible for coordinating the care for USAG's participants and members at every national and international competition; in doing so, Nassar would routinely travel to competitions and provide "medical services" in his capacity as team physician. *Id.* Nassar operated in this role until mid-2015. *Id.*

During these trainings and competitions—in or around 2010, through in or around 2012, and in 2015—Nassar molested and sexually abused Plaintiff. <u>Compl.</u>, ¶¶1-2,37. Defendant Parilla served as Board Member of USAG from in or around 1999, and as Board Chairman from in or around 2015 to January 2018. *Id.* at 23. As such, Plaintiff is informed, believes, and, on that basis, alleges that Parilla oversaw a wide-ranging, calculated, concealment of numerous instances, complaints, and allegations of sexual abuse and misconduct among participants and members of Defendant USAG. *Id.* Plaintiff is informed, believes, and alleges that Parilla's actions and inactions enabled and ratified, in particular, Nassar's sexual abuse of Plaintiff and fueled the ongoing concealment of abuse at USAG. *Id.*

While a team physician at Defendant USAG, Nassar's duties included coordinating the care for Defendant USAG at every national and international competition, providing individual care and providing for the physical needs and well-being of participants and members of Defendant USAG (and in accord with Defendant USOC policies, procedures, and mandates), and care including but not limited to osteopathic adjustments and kinesiology treatment to participants and members of Defendant USAG, which included Plaintiff. *Id.* at ¶24. Plaintiff was a participant and member of Defendant USAG, and it is under these circumstances that Plaintiff Raisman came to be under the direction and control of NASSAR, who, as described above, used his position of authority and trust to molest and sexually abuse Plaintiff. *Id.* at ¶¶1-2,4-5.

///

**MANLY, STEWART & FINALDI**
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**D. DAMAGES SUFFERED BY THE PLAINTIFF AND CAUSED BY DEFENDANTS.**

Plaintiff endured serial molestation and sexual abuse by her confidant and physician under the supervision of the entities which bore direct financial success and notoriety from her hard-fought Olympic medal victories. Compl., ¶3, Ex. "1". To this day, Plaintiff continues to suffer form depression, anxiety, and fear, emanating from her abuse at the hands of Nassar. *Id.* The psychological ramifications of this abuse affect her daily life, including but not limited to Plaintiff not trusting medical professionals, not trusting adult males, and constantly suffering from fear, anxiety, and depression. *Id.* Alongside the mental and physical trauma, Plaintiff visited Nassar in the hopes of addressing legitimate medical concerns, while Nassar prioritized his own sexual gratification over administering care. *Id.* at ¶¶2-3, 38,63. As a result, Plaintiff trained for years in pain, believing that her physician was properly treating the physical ailments associated with gymnastics. *Id.* at ¶3. From a young age, Plaintiff always carried guilt for thinking Nassar was "weird," and she questioned why she did not like the purportedly best gymnastics doctor in the world, although she did not understand at the time that this "treatment" was sexual abuse. *Id.* Upon learning that this "treatment" served as merely a context for recurrent molestation, Plaintiff suffered further guilt, shame, and disgust. *Id.* Furthermore, having been one of the world's most famous gymnasts, Plaintiff lost millions of dollars in economic damages, resulting from her sexual abuse, a loss which continues to this day. *Id.* at ¶58.

**E. USAG'S CONCEALMENT OF SYSTEMIC SEXUAL ABUSE BY NASSAR.**

The bylaws of Defendants USAG, or similar bylaws previously enacted, were made in conformity with broader mandates for Defendant USOC and the protection of minor athletes. Compl., ¶¶19-20, Ex. "1". These bylaws were intended to protect minor gymnasts, including Plaintiff, from the ravages of sexual abuse, molestation and harassment endemic to the sport of gymnastics and address a known, foreseeable, and palpable risk posed to minor gymnasts in particular. *Id.* Nevertheless, despite these bylaws, rules, policies, and procedures—and their transparent purpose of protecting minor athletes—Defendants USAG and Parilla never audited or checked to confirm the efficacy of these policies, verify their implementation, or insure conformance with the applicable standard of care. *Id.* at ¶¶19-20,23.

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Moreover, USAG and Parilla concealed Nassar's chronic abuse and the lax supervision under which he operated. *Id.* at ¶¶19-20,23,37. Plaintiff, a minor throughout most of her molestations, had no meaningful institutional means to protect herself against Nassar's predation. *Id.* In concealing such risks, concerns, and issues with Nassar, USAG was permitted to continue operating as a National Governing Body ("NGB") without censure from civil, criminal, or administrative authorities. *Id.* at ¶48. Because of the relationship between Plaintiff and Defendants, Defendants had an obligation and duty under the law not to hide material facts and information about Nassar's past, and his deviant sexual behavior and propensities. *Id.* at ¶49. Additionally, Defendants had an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard minors who were reasonably likely to come in contact with Nassar, including Plaintiff at the time. *Id.* at ¶19-20,55. Defendants willfully refused to notify, give adequate warning and implement appropriate safeguards, thereby creating the peril and ultimately damaged Plaintiff. *Id.* at ¶55.

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**F. USAG AND PARILLA STANDING *IN LOCO PARENTIS* TO THE PLAINTIFF AND THEIR "SPECIAL RELATIONSHIP".**

During Plaintiff's competitions and trainings, Defendants took custody and control of Plaintiff, a minor gymnast, filling the role usually held by one's parents. USAG and Parilla accepted a duty to protect Plaintiff from foreseeable dangers, like abuse, and quickly investigate, censure, discipline, and/or remove threats to her well-being. Compl., ¶¶23,44. This custodial relationship is known as "*in loco parentis*," where an entity involving children and its employees stand "in the place of the parents." Black's Law Dict. (3d. Pocket Ed. 1996), p.359, col.2.

## III. ARGUMENT

**A. A MOTION TO DISMISS CAN ONLY BE GRANTED IF IT APPEARS "BEYOND DOUBT" THAT NO SET OF FACTS CAN BE ALLEGED TO STATE A CLAIM.**

*FRCP* 12(b)(6) provides that, "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … (6) failure to state a claim upon which relief can be granted…" "The function of a motion to dismiss is to test the law of a claim, not the facts which support it." *Niece v. Sears, Roebuck & Co.* (N.D. Okla. 1968) 293 F.Supp. 792, 794. "Such motions, it must be

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

remembered, have been characterized as 'mere formal motions directed only to the face of the complaint.' As a general rule, they are not favored and should be granted sparingly and with caution only where it appears to a certainty that no set of facts could be proven at trial which would entitle a plaintiff to any relief." *Dann v. Studebaker-Packard Corp.* 288 F.2d 201, 215–16 (6th Cir. 1961) *disapproved of on other grounds by J. I. Case Co. v. Borak* (1964) 377 U.S. 426. "And in furtherance of this policy it has recently been declared to be 'the accepted rule that a complaint should not be dismissed for failure to state a claim **unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief**." *U.S. v. Frank B. Killian Co.* 10 O.O.2d 40 (6th Cir. 1959). Here, the Plaintiff's well-pleaded allegations are to be accepted as true, and the complaint is to be liberally construed by the Court. Under this standard, the Plaintiff each cause of action has been sufficiently pleaded.

**B. DEFENDANTS USAG AND PARILLA WERE IN A "SPECIAL RELATIONSHIP" WITH PLAINTIFF, CONFERRING ONTO THEM A DUTY TO PROTECT PLAINTIFF FROM REASONABLE AND FORESEEABLE DANGERS.**

Although USAG and Parilla deflect their responsibility in this matter, one thing is clear: "[g]enerally, a greater degree of care is owed to children because of their lack of capacity to appreciate risks and avoid danger. ([Citation omitted].) **Consequently, California courts have frequently recognized special relationships between children and their adult caregivers that give rise to a duty to prevent harms caused by the intentional or criminal conduct of third parties**." *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 410 [emphasis added]. The Court in *Juarez* explains the various relationships where a special duty exists, including preschools, a school district to a mother of a student, and wife of sex offender who had children play at their home. *Id.* at 410. This custodial relationship is known as "*in loco parentis*," where an entity stands "in the place of the parents." Black's Law Dict. (3d. Pocket Ed. 1996), p.359, col.2. The Court enunciated the duties of care owed to minors:

> "…**California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection.** [Citations.]' [Citations.] … **Either a total lack of supervision** [citation] or **ineffective supervision** [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision." *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861 [Emphasis Added].

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

The case of *USYSA* compromises USAG and Parilla's arguments that no such duty exists between them and Plaintiff. *USYSA* involved a minor soccer member who participated in soccer programs with a national organization. *Doe v. United States Youth Soccer Association, Inc. (USYSA)* (2017) 8 Cal.App.5th 1118. In *USYSA*, the court stated: "[i]n sum, we conclude that, as in *Juarez*, **there was a special relationship between defendants and plaintiff**… [h]ere, plaintiff was a member of U.S. Youth Soccer Association ("U.S. Youth") and played on a West Valley team, which was the local affiliate of U.S. Youth and Cal North. West Valley **was required to comply with the policies and rules of U.S. Youth.** Since U.S. Youth established the standards under which coaches were hired, U.S. Youth determined which individuals, including [the perpetrator], had custody and supervision of children involved in its programs." *Id.* Even while articulating the existence of a "special relationship" between USYSA and the plaintiff, the court expressly found "… nothing in the present record indicating that defendants were in any way involved in the sexual assault of plaintiff or knew that Fabrizio would harm her." *Id.* at 1137. Nevertheless, the Court still held that USYSA stood *in loco parentis* to these children.

Here, the presence of a special relationship is indisputable, as the control exerted by Parilla and USAG far outpaces the control of the defendants in *USYSA*. Plaintiff was routinely flown across the nation and world *at the direction of USAG*, staying in hotels without her parents, and living completely under the control of USAG officials tasked to supervise her. Compl., ¶¶1-2, 37, Ex. "1". The control USAG exerted over the Plaintiff was extreme, and, moreover, **there were prior warnings about Nassar** (e.g., photographs of gymnasts, violation of safety policies, being in rooms alone with minor girls, unfettered access to minor gymnasts). *Id.* at ¶¶37,45,47-48. Plaintiff also pleads that USAG and Parilla knew or should have known that Nassar violated policies crafted in recognition of the particular dangers posed to minor athletes within gymnastics. Therefore, there is a "special relationship" between the Plaintiff and Defendants.

**C. THE CAUSE OF ACTION FOR SEXUAL HARASSMENT (*C.C.* §51.9) IS PROPER AGAINST USAG AND PARILLA.**

USAG maintains that a sexual harassment claim under *C.C.* § 51.9 "provides no basis to hold anyone but the harasser liable." Motion, 7: 23. However, this is a misleading statement.

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Even in the absence of vicarious liability, a corporate entity can be held liable for sexual harassment. *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1110, litigated a defendant corporation's similar attempt to contort the language of *C.C.* § 51.9 to skirt liability:

> Defendant argues that because it is a business, as opposed to an individual, it cannot be liable for the sexual abuse of plaintiff. Defendant relies on the language in section 51.9, subdivision (a) which states "a person is liable" for sexual harassment. Thus, defendant argues, because it is a corporation, it cannot be liable under the provisions of section 51.9 for sexual abuse. **This contention has no merit**. *C.R.*, 169 Cal. App. 4th at 1110 [emphasis added].

Nonetheless, there are two avenues by which to hold a corporation liable for the acts of its agents: *respondeat superior* and ratification. Ratification is:

> [A]s an alternate theory to respondeat superior, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort. … The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery. **Whether an employer has ratified an employee's conduct is generally a factual question.** *C.R*, 169 Cal. App.4th at 1110 [emphasis added].

The original tort need not be "within the course and scope of business," nor need it even have been an expressly "authorized" action. *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 852. "If the employer, after knowledge of **or opportunity to learn of the agent's misconduct,** continues the wrongdoer in service, the employer may become an abettor and may make himself liable in punitive damages." *Id.* [emphasis added]. In *C.R.*, a nursing facility hired an employee who worked with patients. Despite repeated complaints, the hospital took no action against the perpetrator and, in essence, "condoned and ratified his actions by allowing him to continue working despite the repeated acts of sexual harassment…" *Id.* Under *C.R.*, Defendants can be held liable for its ratification of Nassar's acts of sexual harassment and abuse, as Nassar was pleaded as an agent of USAG, and, further, that USAG had knowledge that he was an abuser but, allowed him to remain in secluded contact with Plaintiff and other young gymnasts. <u>Compl.</u>, ¶37, Ex. "1". USAG engaged in active concealment, failing to inform Plaintiff that Nassar was a molester and, destroying records at the Karolyi Ranch. <u>Compl.</u>, ¶47-48, Ex. "1".[1] These allegations sufficiently show Defendants' ratification of Nassar's conduct.

[1] This is developing information that has only recently been discovered regarding the destruction of records, which can, if leave is granted, be added to fortify the Complaint. <u>Cunny Decl.</u>, ¶3.

**1. The Complaint Provides Sufficient Factual Support for its Claims Against USAG and Parilla to Satisfy *Ashcroft v. Iqbal* and, *FRCP* 8.**

USAG and Parilla allege that Plaintiff fails to provide the mandatory factual support for its claim that USAG ratified Nassar's conduct. Motion, 8: 12-18. Defendants argue that Plaintiff's Complaint "fails to identify any instance where USAG was purportedly informed of Nassar's misconduct prior to or during plaintiff's timeframe of abuse, [and as such] USAG could not have ratified his actions." Motion, 9:16-18. However, neither the pleading standards of *Iqbal v. Ashcroft* (2009), 129 U.S. 1937, nor FRCP 8 itself ever task the Plaintiff with cataloguing every actionable exchange between Plaintiff and Defendants. Such a heightened standard would, in essence, render discovery moot. Instead, *Iqbal* states, in relevant part, "[t]o survive a motion to dismiss, a complaint must contain **sufficient factual matter**, **accepted as true**, to 'state a claim to relief that is **plausible** on its face'" *Id.* at 1950 [Emphasis added]. USAG had safety policies and procedures that both articulated the heightened risk of abuse within gymnastics and also admonished USAG personnel to refrain from unsupervised, one-on-one contact with minor athletes. Compl., ¶¶19-20,55. Nassar's ability to rampantly violate these policies, across trainings and competitions spanning the planet, is a pleaded fact. *Id.* at ¶37. USAG and Parilla either willfully turned a blind eye to Nassar's activities, despite policies to the contrary, or they knew about Nassar's actions and did nothing. *Id.* at ¶¶20,23. Either scenario is plausible, supported by sufficiently pled facts, and warrants claim to relief under *Iqbal* and *FRCP* 8. Furthermore, Plaintiff's well-pled allegations are to be accepted as true, and the Complaint is to be liberally construed by the Court. *Frank B. Killian Co.*, *supra*, 10 O.O.2d 40. Under this standard, each cause of action is sufficiently pleaded, and sufficiently supported by those pleaded facts.

**D. THE CAUSE OF ACTION UNDER "MASHA'S LAW" IS PROPER UNDER the HOLDING OF *MORTON v. DE OLIVEIRA* (9TH CIR. 1993) 984 F.2D 289.**

U.S.C. § 2255 ("Masha's Law") provides:

> "[a]ny person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and **who suffers personal injury as a result of such violation**, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs…" U.S.C.A. § 2255 [emphasis added].

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Specifically, Plaintiff suffered violations under §§2423(b) and §§2423(c) resulting from her molestation by Nassar that occurred internationally, during travel orchestrated by USAG. Compl., ¶¶72-74, Ex. "1". USAG and Parilla make two unavailing arguments to avoid liability:

**1. The Court Should Apply *Celebrity Cruises*, as USAG Transports Minors across International Boundaries, and is Responsible for their Safety While Doing So.**

USAG and Parilla briefly reference *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891,894 (11th Cir. 2004) and summarily state that it "does not apply in this case…" Motion, 12:17-18. Defendants take a narrow view of *Celebrity Cruises*, lacking substantive analysis, and assert that the case only applies to "circumstances [of]… maritime law." Motion, 12:11-17. USAG misinterprets the analysis, which is drawn from the case's own language. In *Celebrity Cruises*, the Court addressed the issue of a "common carrier" and, in determining its definitional scope, analyzed the Ninth Circuit case of *Morton v. De Oliveira* (9th Cir. 1993) 984 F.2d 289. As a result, the Court upheld strict liability for a cruise ship:

> In *Morton*, the plaintiff was alone in her cabin when a crew member delivered wine and raped her. The plaintiff sued, asserting "absolute liability" on the part of the cruise line for crew member assaults on passengers. *Id.* at 290. The plaintiff conceded that she was "unable to show any negligence by [the defendant cruise line] in hiring or supervising" its crew member. *Id.* **The district court determined that the strict liability standard for assaults was 'superseded or over-ruled by *Kermarec.*'**
>
> Reversing, the Ninth Circuit determined that '*Kermarec* cannot be read to overrule' the maritime tort principle that a common carrier owes a duty to protect passengers from assaults by its crew members and is absolutely liable for such assaults. *Id.* at 292. **The Ninth Circuit noted that this absolute liability rule "for crew member assaults cannot be traced to obsolete concepts," but that "it is a widely adopted rule that common carriers owe such an absolute duty to their passengers**." *Celebrity Cruises*, 394 F.3d at 906 [emphasis added].

Now, USAG and Parilla are certain to argue that USAG is not a "common carrier," but that argument ignores that the lineage of the rule which derives from railroads, **not ships,** and is actually quite broad.[2] Here, just as common carriers do, USAG was in the business of transporting its athletes across state lines to conduct its business. Indeed, it had heightened duties to protect these athletes. Indeed, in making this common carrier analysis, the Court in *Celebrity Cruises* noted: "[i]n both *Brockett* and *Jopes*, the Supreme Court spoke of common carrier

[2] "There is no doubt that the M/V Carnival is a common carrier and that many of the concerns that led to the establishment of this rule are present on ships **as well as trains, taxi cabs and other carriers**." *Morton v. De Oliveira*, (9th Cir. 1993) 984 F.2d 289, 292 (emphasis added).

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

liability in general, and was unconcerned with whether the specific mode of transport was a ship or a train." *Id.* at 906. Here, the sprawling nature of USAG must be put into the proper context. USAG is a federally chartered organization under the TSASA, which necessarily engages in interstate commerce and transport of these gymnasts (including to the 2012 Olympics in London, England). Compl., ¶20, Ex. "1". There is no meaningful distinction between USAG's transportation of Plaintiff across U.S. (including The Ranch) and internationally and that undertaken by traditional common carriers such as a cruise ship. **Given that the Olympics are a global event and a gymnasts' participation is essential, a reasonable interpretation is that USAG operates as a common carrier of its own athletes**. *Id.* at ¶¶1-2,75. Moreover, its gymnasts have equal, if not more, compelling needs for protection, as they (1) are under the direct and sole control of USAG and their agents, just like a ship or train, and (2) these are minors transported, largely without their parents, to these foreign jurisdictions to compete. Noting USAG's status as a "common carrier" does not rely upon a tortured interpretation of the law. Rather, "the 'test' of common carrier status relied upon here by *Metro Ambulance* is not defined by rigid criteria but a determination '**depend[ing] upon the facts**' [citation omitted] for '[t]he courts do not seem to have been able to establish some simple test by which it can be determined ... whether a man is a common or a private carrier.'" *Bricks v. Metro Ambulance Service, Inc.* 177 Ga.App. 62, 69 (Ga. Ct. App. 1985) (emphasis added). The D.C. Circuit analyzed a non-traditional common carrier:

> One may be a common carrier though the nature of the service rendered is sufficiently specialized as to be of possible use to only a fraction of the total population. And business may be turned away either because it is not of the type normally accepted or because the carrier's capacity has been exhausted. *American Orient Exp. Ry. Co., LLC v. Surface Transp. Bd.* 484 F.3d 554, 557 (D.C. 2007).

Under *Celebrity Cruises*, there is no meaningful distinction between the traditional concept of a "common carrier" (a ship or train), when USAG acts in essentially the same capacity. As such, the case of *Celebrity Cruises*, in tandem with *Morton*, explain precisely why USAG is directly and strictly liable for the Plaintiff's assaults under 18 U.S.C. § 2255.

**2. There are Facts that Exist and can be Pled Showing that USAG's Agent, Debbie Van Horn, "Aided and Abetted" Nassar's Continued Sex Abuse.**

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Defendants argue that neither traditional notions of agency (through Nassar's status as an employee) nor strict liability hold USAG or Parilla responsible for Plaintiff's damages. However, *Doe v. Liberatore* renders these additional legal theories unnecessary, as USAG and Parilla's agent "aided and abetted" under the law, imputing actual knowledge onto USAG. Defendants USAG and Parilla cite to *Doe v. Liberatore*, 478 F.Supp.2d 742 (M.D. Pa. 2007), a case where civil damages under 18 U.S.C. Sec. 2255 arose against a Diocese through criminal aiding and abetting from the Diocese itself. There, the plaintiff had been abused by a priest years after the Diocese had received notice of a prior sexual incident resulting in a memo that expressed "serious concerns" regarding the priest's behavior. *Id*. at 746-52. The court stated that "if the Diocesan Defendants criminally aided or abetted Liberatore in the commission of his sexual offenses, they may be held liable under section 2255." *Id*. at 756. Since the filing of this action, former USAG employee Debra Van Horn was charged criminally in Texas for child molestation, arising from Nassar's criminal actions, in addition to the allegations made about Van Horn in the Complaint. Compl., ¶10; Indictment of Van Horn, Exhibit "2" to Cunny Decl.; Cunny Decl, ¶3. These facts show that **an official USAG agent**, Van Horn who was working with Nassar during that time that Plaintiff was being molested, imputed actual knowledge to USAG and that she "facilitated" such, falling squarely into *Liberatore*'s exception. *Doe v. Liberatore* 478 F.Supp.2d at 756. Van Horn aided and abetted Nassar, thus, her conduct is imputable to USAG. Compl., ¶10, Ex. "1".

### E. CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) IS PROPER, VIA USAG AND PARILLA'S RECKLESS DISREGARD AND/OR EXTREME AND OUTRAGEOUS CONDUCT.

A successful claim for intentional infliction of emotional distress ("IIED") must establish: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard to causing, emotional distress; (3) severe emotional distress; and (4) actual and proximate causation. *Christensen v. Superior Court*, (1991) 54 Cal.3d 868, 903. The conduct must also be "directed at" the Plaintiffs. *Id*. USAG and Parilla assert two arguments by which to exculpate themselves from responsibility for IIED, neither of which passes muster under California law. First, Defendants claim the Complaint does not "plead any facts that the alleged conduct of Mr. Parilla or USAG was extreme and outrageous." Motion, 13: 12-14. First, it does. Defendants failed to report Nassar

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

to law enforcement timely. Compl., ¶¶55(g),57-58, Ex. "1". No reasonable person would be expected to tolerate such extreme, callous conduct. Secondly, Defendants allege that the Complaint does not plead any facts demonstrating how USAG or Parilla's outrageous conduct was "directed at" the plaintiff. Motion, 13: 22-24. Both will be addressed in turn.

Ultimately, outrageousness is a question for the fact-finder. Plaintiff need only plead sufficient facts for notice. If Defendants allege this to be insufficient, then Summary Judgment is the appropriate stage at which to adjudicate this contention, not through a Motion to Dismiss. Nonetheless, Plaintiff maintains that sufficient facts are provided within her Complaint.

**1. USAG and Parilla's Contribution to the Sexual Abuse was Undertaken with Reckless Disregard for Minors' Safety, Independently Constituting IIED.**

"[I]t is not essential to liability that a trier of fact find a malicious or evil purpose. It is enough that defendant 'devoted little or no thought' to probable consequences of his conduct." *KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1031-32. The requirement of reckless conduct is satisfied by a showing that the defendant acted in reckless disregard of the probability that the plaintiff would suffer emotional distress. *Little v. Stuyvesant Life Insurance Co.* (1977) 67 Cal.App.3d 451, 462. In *KOVR-TV, Inc.*, the Court held that there was sufficient evidence for both "outrageous" prong of IIED, as well as the intent provision of IIED, when a news reporter arrived at a crime scene, and interviewed next-door neighbors who were minors with grisly, visceral questioning. *KOVR-TV, Inc.*, 31 Cal.App.4th at 1027. The Court reasoned that this conduct was sufficiently intentional, and/or reckless, to warrant a finding that the "intent" element of an IIED claim was satisfied. *Id.*; *Phyllis P.*, 183 Cal.App.3d 1193. Here, the Plaintiff has pleaded that Defendants USAG and Parilla were apprised of overtly inappropriate, disconcerting acts. However, USAG and Parilla maintained a callous indifference for the Plaintiff's well-being, doing nothing to curtail Nassar's continued molestation and sexual abuse. Under California law, reckless disregard is sufficient for a finding of IIED.

**2. Turning a Blind Eye and/or Allowing the Plaintiff to Endure Continued Molestation and Sexual Abuse Is Unequivocally Extreme and Outrageous.**

"Conduct, to be outrageous, must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Trerice v. Blue Cross of California*, (1989) 209 Cal. App. 3d 878,

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

883. **The outrageousness of defendant's conduct normally presents an issue of fact to be determined by the trier of fact.** *Angie M v. Superior Court*, (1995) 37 Cal.App.4th 1217, 1226. Courts have held conduct may be determined to be outrageous by three alternative criteria: **(1) abuses a relation or position which gives him power to damage the plaintiff's interest**; **(2) knows the plaintiff is susceptible to injuries through mental distress**; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, n. 7. In *Phyllis P.*, 183 Cal.App.3d 1193, for instance, IIED claims have been allowed to proceed for the failure of childcare personnel to protect a minor while in school. *Id.* USAG and Parilla allowed Nassar to molest athletes under the auspices of "medical treatment," maintain recurring private access to Plaintiff, and administer his "treatments" in secluded and unsupervised settings after gaining knowledge of his inappropriate behavior. Compl., ¶¶1-2,37, Ex. "1". Either failing to intervene upon learning about the aforementioned risks or maintaining willful ignorance of such abuse is extreme and outrageous as a matter of law. Like *Phyllis P.*, childcare institutions that do nothing to protect minors in their care, when abuse is suspected, act outrageously:

> In *Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298 [191 Cal.Rptr. 704], the court permitted recovery of damages for emotional distress occasioned by the defendant's failure to act, where the defendant stood in a special relationship to the plaintiffs, making the plaintiffs the foreseeable victims of defendant's nonfeasance. *Phyllis P. v. Superior Court* (1986) 183 Cal.App.3d 1193, 1195–96.

Failing to administer their own policies makes Plaintiff a victim of Defendants' disregard for her safety, given the inherent risks of minor gymnasts and USAG's safety policies on point. Compl., ¶¶4,19-20,57. In failing to uphold the duties imbued within its "special relationship", Defendants engaged in extreme and outrageous conduct, constituting IIED.

**3. The Conduct of USAG and Parilla was "Directed At" the Plaintiff.**

USAG and Parilla argue that their conduct was not "directed at" the Plaintiff, claiming it thus falls short of the standard for an IIED claim. Motion, 13:8-12. In relevant part, they argue "[i]t is not enough that the conduct be intentional and outrageous. It must be conduct 'directed at' the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen*, 54 Cal.3d at 903. In *Phyllis P.*, a child (Ciera) was being molested by another child at school

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

(Dario). *Phyllis P.*, 183 Cal.App.3d at 1195. The school psychologist and principal were informed that Dario was "playing games" with Ciera and chose not to tell Phyllis P. (Ciera's mother); the abuse continued. *Id.* "Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory." *Christensen*, 54 Cal.3d at 905–06. Thus, USAG and Parilla's conduct indeed **was** "directed at" the Plaintiff, who was a minor in their care, provided **mandatory medical care** by their employee, and who Defendant USAG and Parilla knew or had ample reason to know was rampantly violating protocol and posing recurrent threats of harm to minors. Compl., ¶¶37,46,47-48,. As in *Phyllis P.*, an organization conduct is "directed at" a minor when it knows they are at *risk* of abuse but does nothing to further protect the child. As pled in the Complaint, Defendants USAG and Parilla knew or had reason to know "of Nassar's dangerous propensities to sexually abuse children, yet concealed and failed to disclose to Plaintiff [] this information." Compl., ¶81, Ex. "1". Either USAG and Parilla knew that Nassar rampantly violated the policies and procedures established by USAG **for the express purpose of protecting minor athletes**, or they simply conducted business as though the policies were superfluous. Either scenario creates risk of child molestation, and satisfies the "directed at" standard for an IIED claim.

**F. THE *B&PC* § 17200 CAUSE OF ACTION IS PROPERLY PLED.**

USAG and Parilla attempt to manufacture limitations on *B&PC* § 17200 that do not comport with the intentionally broad language of the statute. "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…" *B&P Code*, § 17200. An unfair business practice "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker* (9th Cir. 2008) 543 F.3d 498, 506. Whether a given course of conduct is a "business practice" under the statute is a **factual inquiry, dependent on the circumstances of each case.** *Isuzu Motors, Ltd.v. Consumers Union of U.S., Inc.* (C.D. Cal. 1998) 12 F.Supp.2d 1034, 1048. A business "practice" can violate §17200 even

when it does not affect more than one "victim." *Allied Grape Growers v. Bronco Wine Co.* (1988) 203 Cal.App.3d 432, 453. A business practice can be found "unfair" even if it is "lawful" and not "deceptive." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180. The "unfair" standard within the statute is intentionally broad, further explained in *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266-67: "[t]he legislature intended this 'sweeping language' to include 'anything that can properly be called a business practice and that at the same time is forbidden by law'" *Id.* **The violation of an internal policy can constitute an "unfair" business practice**, otherwise "…the only actionable conduct would be that which would otherwise be unlawful or give rise to an independent tort." *Smith v. Chase Mortg. Credit Group* (E.D. Cal. 2009) 653 F.Supp.2d 1035, 1045–46 (emphasis added).

Defendants' conduct falls squarely within the scope of *B&PC* § 17200 by having "failed to enforce their own rules and regulations designed to protect the health and safety of the participants and members." Motion, 21: 9-10. Then, USAG-President Colarossi's letter from 1999 noted that the safety procedures followed by USAG were part a "fundamentally flawed process" amidst an "apparent indifference to the welfare of young children manifest in the Committee's actions." Compl., ¶44; Exhibit A to Complaint. The letter acknowledges that Defendants knew of, or should have known of, the risks of abuse in the sport for child molestaiton before Nassar sexually abused Plaintiff, and knew of the probability that Nassar and others at USAG would molest minor athletes with whom they came into contact. *Id.* Acknowledgement by the USAG President that the USAG was violating its own policies meets the literal definition of an "unfair business practice" under *Smith v. Chase*.

**1. *BP&C* § 17202 Provides for Injunctive Relief as a Remedy for "Unfair Competition," and Multiple Remedies are Available to the Plaintiff.**

Defendants argue that non-injunctive relief—including restitution, disgorgement, and attorney's fees—are impermissible as a matter of law for a UCL cause of action. This is false. "Notwithstanding Section 3369 of the *Civil Code*, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." *B&PC* § 17202. "A UCL action is equitable in nature, and **the court may consider equitable factors** in deciding

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

which, if any, remedies authorized by the UCL should be awarded." *Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1214, *as modified* (Apr. 2, 2003), *as modified* (Apr. 9, 2003). "Because a court 'may make such orders or judgments... as may be necessary to prevent the use or employment... of any practice which constitutes unfair competition... or as may be necessary to restore... **money or property the "courts' discretion is very broad' as to the remedy it awards**." *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 695, *as modified on denial of reh'g* (Jan. 31, 2006). Thus, the claims for injunctive relief and other equitable remedies, made against USAG and Parilla and premised on the § 17200 claim, are proper and within the discretion of the Court to award, in order to remediate against these unfair business practices of USAG.

**G. <u>A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS PROPER</u>.**

USAG and Parilla claim that the cause of action for Breach of Fiduciary Duty fails on the alleged basis that there is no recognizable fiduciary duty between them and Plaintiff. <u>Motion</u>, 17: 23-25. However, while denying the presence of a fiduciary duty, Defendants note the fundamental obligations of such relationship: "(1) duty of loyalty, and (2) duty of confidentiality," often in tandem with "one party control[ling] some interest of the other party." <u>Motion</u>, 18: 5-7; *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1102 (1991). However, these are **obligations in the presence** of such a duty, not premises for establishing the duty itself.

In their attempt to refute the presence of a fiduciary relationship, Defendants claim that Plaintiff has "not properly alleged a fiduciary relationship with USAG or Mr. Parilla, [and thus] has not stated a claim for breach of fiduciary duty." <u>Motion</u>, 17: 24-26. To this end, Defendants state that Plaintiff's "Complaint conclusorily [sic] alleges that there was a 'fiduciary relationship'… apparently based on a 'special relationship' between the parties." <u>Motion</u>, 18: 15-17. Alleging the conflation of two relationships does not dismiss Plaintiff's legal foundation for each. Defendants baldly assert that "a special relationship is not a fiduciary relationship, as a special relationship does not involve a duty of loyalty or confidentiality." <u>Motion</u>, 18, 17-19. This is unsubstantiated. There clearly exists a fiduciary duty between Defendants and Plaintiff. Foremost, "[t]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that

trust and confidence is in a superior position to exert unique influence over the dependent party." *Barbara A. v. John G.*, (1983) 145 Cal.App.3d 369, 383. Defendants claim that "since there is no legal basis for the claim that a fiduciary relationship existed between plaintiff and USAG and/or Mr. Parilla, this Court should dismiss" Plaintiff's claim. Motion, 19: 1-4. Defendants' foundation for calling for dismissal is unduly narrow as a matter of law. *Barbara A.* notes that "[a] 'confidential relationship' may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship." *Id. Barbara A.* expressly states that "the terms 'fiduciary' and 'confidential' are used synonymously to describe any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. *Barbara A. v. John G.* (1983) 145 Cal.App.3d 369 [193 Cal.Rptr. 422]. This unequivocally envelopes the relationship between USAG, Parilla, and Plaintiff. To allege contrary is to allege that neither USAG nor Parilla had any duty "to act with the utmost good faith for the benefit of the other party." *Id.*

*Copeland v. Bank of America Servicing*, 2014 WL 12696534, *5 (C.D. Cal. Nov. 14, 2014) expressly notes that a fiduciary relationship "can [be] properly infer[red]" from facts supplied to the Court. Here, Plaintiff was a minor, entrusted into care of USAG and Parilla, and repeatedly transported across the planet for their financial gain, where she was repeatedly abused. Compl., ¶¶1-2,4,20,23, Ex. "1". Duties of loyalty and confidentiality—as basic tenets of the *in loco parentis*[3] role assumed by USAG and Parilla—can be inferred from such a relationship.

**H. THE CONSTRUCTIVE FRAUD CAUSE OF ACTION IS PROPER.**

Defendants next claim there were no misstatements made to Plaintiff that constitute constructive fraud. Constructive fraud, as a cause of action, is "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice…" *Civil Code* § 1573. "Misstatement or suppression of facts is not fraudulent ***unless*** motivated by an intent to deceive… or unless it amounts to a breach of duty (§ 1573). **The question of actual fraud is always one of fact**." *Mesmer v. White*,

[3] This custodial relationship is known as "*in loco parentis*," whereby an entity and its employees stand "in the place of the parents." Black's Law Dict. (3d. Pocket Ed. 1996), p.359, col.2.

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

(1953) 121 Cal. App. 2d 665, 671 [emphasis added]. Defendants cannot preclude a constructive fraud cause of action under the "misrepresentation" element if such has been sufficiently pled as it has here. Such is simply not the proper subject of a demurrer. *Id.*

Critically, Defendants assert that "[s]ince plaintiff was never in a fiduciary relationship with USAG or Mr. Parilla, [and Defendants] cannot, as a matter of law, be liable under a cause of action for constructive fraud." Motion, 20, 23-25. This, of course, presupposes the lack of a fiduciary or confidential relationship, which, as explored above, is not the case. (*See* Section III(H). "A constructive fraud arises on a breach of duty by one in a fiduciary relationship who misleads another to his prejudice." *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 109. Plaintiff was misled by Defendants about the safety while in the care and custody of USAG's physicians, as well as Defendants' concern for her safety and well-being while in their control.

Additionally, Defendants allege that heightened pleading standards apply to allegations of fraud. FRCP Sec. 9(b). This is true. However, it is not true in the way, or to the extent, that Defendants suggest. "When averments of fraud are made, the circumstances constituting the alleged fraud must be specific enough to give defendants **notice of the particular misconduct** so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003) 317 F.3d 1097. Plaintiff articulates the particular misrepresentation that resulted in her abuse with clarify and specificity: USAG and Parilla should not have "h[e]ld out Nassar… to the public, the community, minors, parents and law enforcement agencies as being in good standing and, trustworthy in keeping with him and his position as a team physician and authority figure." FAC, 34: 20-22 (Par. 105(d)). Even more specific, Plaintiff alleges "[t]he misrepresentation[], suppression[] and concealment of facts by Defendants… [in] that there were no other charges, claims or investigations of unlawful or sexual misconduct against Nassar or others and that there was no need for them to take further action or precaution." Compl., ¶¶108-112. "Fail[ing] to provide particulars of when, where, or how *[an] alleged conspiracy"* to defraud the plaintiff would fall short of the FRCP 9(b) pleading standards, not the specific causes of action pleaded by the Plaintiff. *Vess v. Ciba-Geigy* 317 F.3d at 1097. USAG and Parilla alleges that Plaintiff has not adequately alleged the breach. This is unfounded, as

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Defendants ignore, again, the allegations within the Complaint. clearly alleged that Defendants USAG and Parilla knew or should have know that Nassar was engaging in sexual misconduct, breaching their duties to inform Plaintiff of clear threats to her well-being. Compl., ¶¶45-46.

## I. THE NEGLIGENCE *PER SE* ALLEGATIONS ARE PROPER AGAINST USAG AND PARILLA.

USAG and Parilla claim that no institutions or entities are mandated reporters and, as such, are not liable for the rampant unreported abuse in USAG. Motion, 21: 10-11. This is absurd, as California law on the issue is directly contrary to this position, and this position evidences precisely why Defendants USAG and Parilla averted their eyes to systemic abuse in USAG, including the abuse from Nassar. Indeed, aside from stating summarily that USAG's employees were not mandated reporters, Defendants provide no substantive analysis. The law on mandated reporting is indeed quite simple. Individuals who work with children are mandated to report suspected child abuse. *Penal Code* § 11164, *et seq.* The *Penal Code* sets out who is a "Mandated Reporter." *P.C.* § 11165.7. Mandated Reporters can be: "(6) An administrator of a public or private day camp. (7) An administrator or employee of a public or private youth center, youth recreation program, or youth organization, [or] (8) An administrator or employee of a public or private organization whose duties require direct contact and supervision of children." *Id.* at (b)(6)-(8). Organizations that employ Mandated Reporters are:

> "…strongly encouraged to provide their employees who are mandated reporters with training in the duties imposed by this article. …. Whether or not employers provide their employees with training in child abuse and neglect identification and reporting, **the employers shall provide their employees who are mandated reporters with the statement required pursuant to subdivision (a) of Section 11166.5.**" *P.C.* §11165.7(c) [Emphasis Added].

There is no evidence that Defendants USAG or Parilla provided their employees with the required statement pursuant to Sec. 11166.5(a). Furthermore. the *Penal Code* §11166.5(a) defines the acknowledgement that must be given to such employees:

> "(a) On and after January 1, 1985, any mandated reporter as specified in Section 11165.7, with the exception of child visitation monitors**, prior to commencing his or her employment, and as a prerequisite to that employment, shall sign a statement on a form provided to him or her by his or her employer to the effect that he or she has knowledge of the provisions of Section 11166 and will comply with those provisions. The statement shall inform the employee that he or she is a mandated reporter and inform the employee of his or her**

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**reporting obligations under Section 11166 and of his or her confidentiality rights under subdivision (d) of Section 11167. The employer shall provide a copy of [these sections] to the employee."** *Id*. [Emphasis Added].

Employers, including institutions and entities, must provide their Mandated Reporter employees with the documentation described in § 11166.5 and maintain that documentation.

Defendants further allege that "the plain language of the statute confirms that no institutions or entities are considered mandatory reports… [and that] the duty to report is an individual's duty," citing *Penal Code* § 11166(i)(1). Defendants conveniently omit the next line in Sec. 11666(i)(1) that puts this provision into context: "[t]he reporting duties under this section are individual, **and no supervisor or administer may impede or inhibit the reporting duties**, **and no person making a report shall be subject to any sanction for making the report**" (emphasis added). Thus, the "individual" nature of the duty means that an institution/entity may not restrict a mandated report, and presupposes that the institution/entity assumes liability for impeding or inhibiting such. Otherwise, Defendants' interpretation would incentivize intentional "averting of the eyes," endangering children, against the purpose of §11166.

**1. Plaintiff Pled Specific Facts Sufficient to Show Breach against Defendants USAG and Parilla for Negligence *Per Se*.**

Defendants note that, pursuant to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, a plaintiff is required to provide factual support for each allegation that rise above the "speculative level." Motion, 21: 14-16. Insofar as mandatory reporting is concerned under the *Penal Code*, Plaintiff more than satisfies this burden. As noted above, at least as early as 1999—within the timeframe of Plaintiff's abuse—Defendant USAG and its Board, including Defendant Parilla, were aware of the inadequacies of USAG safety policies and procedures, as detailed by a letter to the USOC by then-USAG President Colarossi. Compl., ¶44; Exhibit A to Complaint. He noted that the safety procedures followed by USAG were part a "fundamentally flawed process" amidst an "apparent indifference to the welfare of young children manifest in the Committee's actions." *Id*. Further, the Plaintiff **expressly pleads that USAG's agents, and Parilla are mandated reporters, therefore, they individually have a duty to report.** *Id.* at ¶21. However, the "apparent indifference" brought to the direct attention of USAG and its Board, including Parilla, lead to

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

*zero* reports to authorities. *Id.* at ¶¶47-48. These facts, on their face, are sufficient to show breach, as is required under California *Evidence Code* § 669. Each of the elements under § 669 are satisfied as failing to report violates a statute (Compl., ¶¶47-48) and not reporting the abuse caused injury to the Plaintiff (*Id.* at ¶¶1-2,47-48), the statute was intended, clearly, to protect children (*Penal Code* § 11166, *et seq*.) and the Plaintiff was, at the time, an individual who should have been protected by the statute. Compl., ¶¶1-2,4. Thus these **breach** allegations are sufficient.

### J. THE NEGLIGENT FAILURE TO WARN, TRAIN, AND EDUCATE CAUSE OF ACTION IS PROPER.

Defendants allege that this cause of actions alleging failure to warn, train, or educate employees lacks a cognizable legal theory to support it. Motion, 21: 22. However, the case law behind such allegation is robust and clear. *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 delineates the basis for holding those liable for failure to warn of known dangers. There, a psychiatrist was held liable for failing to warn a third party who her patient stated he intended to harm. *Id*. Similarly, *Phyllis P. v. Superior Court* (1986) 183 Cal.App.3d at 1196, expounded that a school had a duty to warn a parent, when the school knew that another child had been "playing games" with the minor victim. *Id.* at 1195. In *Phyllis P.*, a minor was sexually abused by another student. *Id.* Prior to the abuse, it was reported to the school psychologist that the perpetrator was "playing games" with the victim, but this was not reported to the parents. *Id.* In finding that the ***mother*** had a cause of action (the minor victim's claims were uncontested), the Court held that, "defendants did not properly supervise Dario and did not take the necessary steps to insure Ciera's safety, nor did they notify petitioner **who could have taken such steps herself**." *Id.* at 1196 (emphasis added). "Defendants stood *in loco parentis* and owed a duty of care not only to Ciera, but under the circumstances of this case, to Ciera's mother as well." *Id.* at 1196

Defendants knew of, or should have known of, Nassar's propensity and disposition to engage in sexual misconduct with minors before he sexually abused Plaintiff, and knew of the probability that Nassar would molest minor athletes with whom he came into contact. Compl., ¶¶45,47-48, Ex. "1". Plaintiff also alleges that Nassar was repeatedly informally censured, disciplined, and/or reprimanded by Defendants, for taking an inordinate number of photographs

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

of young girls, who were gymnasts. *Id.* This conduct received no further investigation from USAG or Parilla, nor reporting to law enforcement or child welfare authorities, and, of course, never communicated to Plaintiff or her family. *Id.* As affirmed by *Phyllis P.*, Defendants bore an affirmative duty to warn Plaintiff and train employees to do the same.

**K. THE COMPLAINT ALLEGES FACTS CONSISTING OF "MALICE," "OPPRESSION," AND "FRAUD" THUS, PUNITIVE DAMAGES ARE PROPER.**

Defendants argue that punitive damages should be dismissed. Motion, 23: 1-8. However, "a plaintiff may recover punitive damages in an action for the breach of an obligation not arising out of contract **where the defendant has been guilty of oppression, fraud, or malice.** [Citation Omitted] 'Malice' exists when the defendant intends to cause injury to the plaintiff or the defendant engages in despicable conduct with willful and conscious disregard of the rights or safety of others. [citation omitted] 'Oppression' exists when the defendant in conscious disregard of a person's rights engages in despicable conduct subjecting that person to cruel and unjust hardship." *Angie M. v. Superior Court*, (1995) 37 Cal. App. 4th 1217, 1227-28[Emphasis Added]. "When the plaintiff alleges an intentional wrong, a prayer for exemplary damages may be supported by pleading that the wrong was committed willfully or with a design to injury." *G.D. Searle & Co. v. Sup. Ct*, (1975) 49 Cal. App. 3d 22, 29, *citing James v. Herbert*, 149 Cal. App. 2d 741, 750 (1957). When the plaintiff alleges a nondeliberate injury, "*conscious disregard of safety* (is) an appropriate description of the *animus malus* which may justify an exemplary damage award…" *Id.*(emphasis in original). "Where, as here, **the complaint pleads sufficient facts to apprise the defendant of the basis upon which relief is sought**, and to permit the drawing of appropriate legal conclusions at trial, absence of the labels 'wilful,' 'fraudulent,' 'malicious,' and 'oppressive' from the complaint, **does not defeat the claim for punitive damages.**" *Blegen v. Superior Court*, (1981) 125 Cal. App. 3d 959, 963 [emphasis added]. "Malice" is "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *C.C.* §3294(c)(1). "Despicable conduct is conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Mock v. Michigan Millers Mutual Ins. Co.*, (1992) 4 Cal. App. 4th 306, 331.

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

"**Malice does not require actual intent to harm**." *Angie M. v. Superior Court*, (1955) 37 Cal. App. 4th 1217, 1228[Emphasis Added]. "**A conscious disregard for the safety of others may constitute the malice necessary to satisfy a claim for punitive damages**." *Taylor v. Superior Court*, (1979) 24 Cal. 3d 890, 895[Emphasis Added]. "In order to justify an award of punitive damages on that basis, the plaintiff must establish that the defendant was aware of the probably dangerous consequences of his conduct, and willfully and deliberately failed to avoid those consequences." *Blegen v. Superior Court*, (1981) 125 Cal. App. 3d 959, 962-963. Repeatedly exposing children, and Plaintiff in particular, to a man who has a known propensity for sexual abuse, is exactly the "vile, base, contemptible, miserable, wretched or loathsome" conduct that "ordinary and decent people" would despise. *Mock*, 4 Cal.App.4th at 331. Further, in finding that an intoxicated driver who caused an injury, the court held that punitive damages were appropriate. *Taylor v. Superior Court of Los Angeles County*, (1979) 24 Cal. 3d 890, 895-96. "We concur with the Searle observation that a conscious disregard of the safety of others may constitute malice within the meaning of section 3294 of the Civil Code. C.C. § 3294… to justify an award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Taylor*, 24 Cal. 3d at 895-96. "As we have pointed out, it was established in this state… that a conscious disregard of safety and probable injury to others could constitute 'malice' within the meaning of that term as used in Civil Code section 3294." *Dawes v. Superior Court*, (1980) 111 Cal. App. 3d 82, 91; *Civil Code* § 3294. The Plaintiff has demonstrated wanton and malicious conduct that was directed at her, based on USAG's and Parilla's failures to report, failures to respond to the epidemic of abuse in the sport, and concealment of information that would have permitted the Plaintiff to maintain for her own safety (in the event USAG and Parrilla were not going to do so). Compl., ¶¶21,46-48, Ex. "1". Thus, as stated above, there are ample facts showing that the Plaintiff can maintain punitive damages claims.

///

///

**L. <u>PLAINTIFF'S PRAYER FOR DECLARATORY RELIEF SHOULD BE MAINTAINED</u>.**

Defendants note that Prayer No. 8 requests "declaratory and injunctive relief" and argues that the alleged lack of detail regarding the request to which the declaratory relief is tied means the Prayer warrants dismissal. This is improper. Under § 17203 of the California Business and Professions Code, Plaintiff is entitled to a preliminary and permanent injunction. § 17200 is broad in its remedies, and, consequently, the additional Prayer for Relief is neither redundant nor overbroad. Thus, this Prayer should be maintained. Should the Court require additional specificity, Plaintiff respectfully requests leave to amend this Prayer for Relief.

**M. <u>IN THE ALTERNATIVE, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND THE COMPLAINT AS REQUIRED</u>.**

"In this Court, 'if a complaint is vulnerable to [Federal Rule of Civil Procedure] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Travelers Indem. Co. v. Dammann & Co., Inc.* 594 F.3d 238, 256 (3d Cir. 2010). "Under Rule 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. After that point, leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F.2d 604, 607. In the event the Court disagrees with Plaintiff's position as to any of the challenged causes of action, Plaintiff requests leave to amend in order to plead further facts. <u>Cunny Decl.</u>, ¶3.

**IV. <u>CONCLUSION</u>**

The Plaintiff respectfully requests that the Court deny the instant Motion to Dismiss by Defendants, as each cause of action is sufficiently supported by the allegations.

Dated: November 21, 2018

**MANLY, STEWART & FINALDI**

By: ______________________

ALEX E. CUNNY, Esq.
Attorneys for Plaintiff,
ALEXANDRA ROSE RAISMAN

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

JOHN C. MANLY, Esq. (State Bar No. 149080)
VINCE W. FINALDI, Esq. (State Bar No. 238279)
ALEX E. CUNNY (State Bar No. 291567)
JANE E. REILLEY (State Bar No. 314766)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys for Plaintiff, ALEXANDRA ROSE RAISMAN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE**

ALEXANDRA ROSE RAISMAN, an individual.

Plaintiff,

v.

UNITED STATES OLYMPIC COMMITTEE, a Business Entity of form unknown; USA GYMNASTICS, an Indiana Business Entity of Form Unknown; LARRY NASSAR, an individual, STEVE PENNY, an individual, PAUL PARRILLA, an individual, and DOES 1 through 500.

Defendants.

Civil Case No. 5:18-cv-02479-BLF

[The Honorable Beth Labson Freeman]

**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF ALEXANDRA ROSE RAISMAN'S OPPOSITION AND OPPOSITION TO DEFENDANT USA GYMNASTICS' AND PAUL PARILLA'S CORRECTED MOTION TO DISMISS PURSUANT TO *FRCP* 12(b)(6)**

**Hon. Judge Beth Labson Freeman**

[Filed concurrently with Notice of Opposition]

Complaint filed: February 28, 2018

Judge: Honorable Beth Labson Freeman
Courtroom: 6D

**<u>DECLARATION OF ALEX E. CUNNY</u>**

I, ALEX E. CUNNY, hereby declare:

1. I am an attorney duly licensed to practice law in the State of California. I am an attorney with Manly, Stewart & Finaldi, attorneys of record for ALEXANDRA ROSE

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

RAISMAN (hereinafter, the "Plaintiff"), in the above-entitled matter. I am personally familiar with the facts of this case and the contents of this Declaration, and if called upon, could and would competently testify as to its contents.

2. This Declaration is made in support of the Plaintiff's Opposition to Defendants USA Gymnastics ("USAG") and Paul Parilla's ("Parilla") Motion to Dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(6).

3. Since this matter was first filed in February of 2018, discovery has been proceeding and developments surrounding the "Nassar Scandal" have been evolving. As such, there are ample further, specific facts that can be further alleged with respect to a number of areas of the Complaint, including the removal of records from the Karolyi Ranch, indictments of Steve Penny and Debra Van Horn, and other information that has subsequently come to light (either through discovery or publicly) that would be relevant, should further facts be requested to be pleaded.

4. Attached hereto as Exhibit "1" is a true and correct copy of the operative Complaint in this Action, which was removed from Santa Clara County, Case No. 18-CV-323989.

5. Attached hereto as Exhibit "2" is a true and correct copy of the criminal indictment of Debra Van Horn, which was obtained by my office from the Court in Walker County, Texas. This was obtained as a certified copy, and a true and correct copy of that document sent from Walker County to my office, is being attached hereto. In the event the Court believes the allegations in paragraph 10 of the complaint are insufficient regarding Ms. Van Horn, this is offered as evidence that further facts can be pleaded, if necessary.

I hereby declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this November 21, 2018 at Irvine, California.

By: ______________________
ALEX E. CUNNY, Esq.,
Declarant

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

2

**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF ALEXANDRA ROSE RAISMAN'S OPPOSITION TO USAG'S MOTION TO DISMISS PURSUANT TO *FRCP* 12(b)(6)**

# EXHIBIT "1"

E-FILED
2/28/2018 3:09 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
18CV323989
Reviewed By: G. Reyes

JOHN C. MANLY, Esq. (State Bar No. 149080)
VINCE W. FINALDI, Esq. (State Bar No. 238279)
ALEX CUNNY (State Bar No. 291567)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys of Record for Plaintiff, ALEXANDRA ROSE RAISMAN, an individual

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SANTA CLARA**

ALEXANDRA ROSE RAISMAN, an individual.

Plaintiff,

v.

UNITED STATES OLYMPIC COMMITTEE, a Business Entity of form unknown; USA GYMNASTICS, an Indiana Business Entity of Form Unknown; LARRY NASSAR, an individual, STEVE PENNY, an individual, PAUL PARRILLA, an individual, and DOES 1 through 500.

Defendants.

Case No.: 18CV323989
Judge: 
Department: 

**COMPLAINT FOR DAMAGES FOR:**

1) **SEXUAL HARASSMENT (C.C. § 51.9);**
2) **MASHA'S LAW (18 U.S.C. §§2255, 2423(b), 2423(c))**
3) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
4) **UNFAIR BUSINESS PRACTICES (*CAL. BUS. & PROF. CODE* §17200);**
5) **BREACH OF FIDUCIARY DUTY;**
6) **CONSTRUCTIVE FRAUD;**
7) **NEGLIGENCE;**
8) **NEGLIGENT SUPERVISION**
9) **NEGLIGENT RETENTION/ HIRING;**
10) **NEGLIGENT FAILURE TO WARN;**
11) **GENDER VIOLENCE (*C.C.* §52.4);**
12) **SEXUAL BATTERY.**

[Filed pursuant to *C.C.P.* §340.1]

**DEMAND FOR JURY TRIAL.**

**COMES NOW**, Plaintiff ALEXANDRA ROSE RAISMAN (hereinafter referred to as "Plaintiff" or "ALY RAISMAN") who complains and alleges as follows:

EXHIBIT 1
001

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

GENERAL ALLEGATIONS AS TO THE PARTIES

1. This case arises from the serial molestation, sexual abuse and harassment of ALY RAISMAN, three-time Olympic gold medalist, by her trusted team physician and former Olympic Team Doctor Defendant Lawrence "Larry" Gerard Nassar ("NASSAR"), while ALY RAISMAN was a young girl and woman, competing for the honor of her country. These molestations of the Plaintiff occurred over several continents, on numerous occasions, and could have been prevented, had Defendants USA Gymnastics ("USAG"), the United States Olympic Committee ("USOC") or former president of USAG, Defendant STEVE PENNY ("PENNY") had taken the mandate of ALY RAISMAN's safety, and numerous other minors in their care, seriously. Despite having knowledge that NASSAR had been sexually abusive towards minor, been left in solitary contact with minor girls, and having been notified that NASSAR was a pedophile (or could have learned of such through reasonable diligence), Defendants USAG, USOC, PENNY and DOES 1 through 500 instead put their quest for money and medals, above the safety of the Plaintiff and other minor competitive athletes; athletes who were responsible for the financial success and prosperity of those Defendants. The Plaintiff, ALY RAISMAN, began her gymnastics career at the tender age of two (2) years old, and gained her inspiration from watching and re-watching a VHS tape of the "Magnificent Seven" at the 1996 Olympics held in Atlanta, Georgia and who won the Women's Team Final. Since that time, ALY RAISMAN dedicated her childhood to the pursuit of honoring that legacy, competing in the Olympics, and winning a gold medal for her country. The Plaintiff accomplished this monumental goal by the age of eighteen (18) years old, all while being serially molested by her confidant and trusted physician, NASSAR, under the watch of Defendants USOC, USAG, PENNY and DOES 1 through 500.

2. Despite having the power, authority, and mandate to do so, the Defendants USAG, USOC, PENNY and DOES 1 through 500 never intervened to discipline Defendant NASSAR, never ensured that Defendants USAG and NASSAR were following Defendant USOC rules and mandates, and through the express disregard for the safety of minors, allowed Defendant NASSAR to continue in his position of trust, power and access to ALY RAISMAN, as well as numerous

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

other elite minor athletes who competed with ALY RAISMAN. After Defendant NASSAR was only finally removed from his position at USAG, he continued to sexually abuse minors in his role as a physician for over a year.

3. To this day, ALY RAISMAN continues to suffer depression, anxiety and fear stemming from her abuse by Defendant NASSAR, which affects her daily life, including but not limited to the Plaintiff not trusting medical professionals, not trusting adult males, and constantly suffering from feelings of fear, anxiety, and depression. In addition to this psychological and physical trauma suffered by ALY RAISMAN, the Plaintiff continued to train for years in pain, believing that Defendant NASSAR was properly treating her physical ailments associated with her sport. When she was young, ALY RAISMAN always felt guilty for thinking NASSAR was weird, and questioned why she did not like the purported best gymnastics doctor in the world, though she did not understand the purported medical treatment she was receiving, at that time, was sexual abuse. Upon learning that this was not legitimate treatment, the Plaintiff suffered further humiliation, guilt, shame, and disgust.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**THE PLAINTIFF**

**ALY RAISMAN**

4. The Plaintiff ALY RAISMAN is now a young adult female who currently resides in the State of Massachusetts, who was born on May 25, 1994. The Plaintiff ALY RAISMAN was formerly an elite minor gymnast who was sexually abused by NASSAR believing this was medical treatment, while competing in National and International Competitions, including but not limited to competitions in California, Japan, the Karolyi Ranch in Huntsville, Texas (and other locations across the United States and internationally, including in Europe, Asia and Australia) that were hosted, sanctioned, supervised, and/or endorsed by, under the supervision of, chartered, and/or under the mandate of Defendants USAG, USOC, and DOES 1 through 500. During many of these events, the Defendants USOC, USAG, PENNY, and DOES 1 through 500, took care, custody and control of Plaintiff ALY RAISMAN and stood *in loco parentis* with her and her parents. Defendants USOC, PENNY and USAG had a duty to protect ALY RAISMAN from known or foreseeable dangers, such as Defendant NASSAR, and to promptly investigate, censure, discipline,

and/or remove Defendant NASSAR; and/or take remedial actions; actions they never took until after the cessation of ALY RAISMAN's abuse.

5. The Plaintiff was an elite level gymnast and member of Team USA who competed and trained in National and International competitions on behalf of the United States. These National and International competitions and trainings occurred in places including, but not limited to: Santa Clara County in California, the "Karolyi Ranch" located in Huntsville, Texas and other locations across the United States and internationally, including the most elite competitions occurred in Asia, Australia, and Europe. During many of these competitions, the Plaintiff was subjected to sexual harassment, sexual assault, sexual abuse and molestation by Defendant NASSAR, including but not limited to competitions and trainings that occurred in Santa Clara County in California, at the Karolyi Ranch in Huntsville, Texas, in Japan, and other locations across the United States and internationally, including Europe and Australia. The Plaintiff was sexually abused on numerous occasions and at numerous locations in or around 2010 through in or around 2012, and in 2015. This sexual abuse of the Plaintiff occurred at events where Defendants USAG, USOC, PENNY and DOES 1 through 500 were responsible to supervise the Plaintiff, ensure proper medical procedures and protocols were followed, warn the Plaintiff of known dangers, and to provide for her safety.

6. This action is brought pursuant to *Code of Civil Procedure* §340.1, which governs the statutes of limitations arising from childhood sexual abuse. As a victim of childhood sexual abuse, and a young adult under the age of 26 years old, thus, ALY RAISMAN's action is timely.

**DEFENDANTS**

**DEFENDANT, UNITED STATES OLYMPIC COMMITTEE ("USOC")**

7. Defendant USOC, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Colorado and is headquartered in Colorado Springs, Colorado. The USOC is a federally chartered nonprofit corporation, which was reorganized by the Ted Stevens Amateur Sports Act, originally enacted in 1978. As advertised on its website, "[t]he USOC has two primary responsibilities in its oversight of Olympic and Paralympic sport in the United States. The first is to generate resources in support of its mission,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

which is to help American athletes achieve sustained competitive excellence. The second is to ensure organizational resources are wisely and effectively used to that end." Furthermore, Defendant "...**USOC is committed to creating a safe and positive environment for athletes' physical, emotional and social development and to ensuring that it promotes an environment free of misconduct**." Under the Ted Stevens Amateur Sports Act, 36 *U.S.C.* §§220501, *et seq.* (hereinafter, "Ted Stevens Act") Defendant USOC had a mandatory obligation to ensure that before granting NGBs, including USAG, a sanction to host National or International events, that they provide "**proper medical supervision will be provided for athletes who will participate in the competition**." 36 *U.S.C.* §§220525(b)(4)(E).

8. For in or around 2011 through the cessation of the Plaintiff's sexual abuse by Defendant NASSAR, the "Karolyi Ranch" was designated as being the United States' Olympic Training Center, thus, was required to follow all protocols, mandates, policies, bylaws, rules, and/or practices of Defendant USOC (as well as Defendant USAG).

9. During all relevant times during ALY RAISMAN's abuse, Defendant USOC was responsible for ensuring that the Karolyi Ranch, provided adequate supervision for the minors competing thereat, reasonable safety protocols ensuring the safety of those minors, and reasonable supervision, training, and oversight procedures for all medical care provided to gymnasts at the Karolyi Ranch, including training of staff on identification of sexual abuse, proper procedures, use of proper medical care, and staffing of ample medical personnel to ensure proper care of all minor gymnasts, including the Plaintiff ALY RAISMAN. Despite these duties under the law, Defendant USOC implemented virtually no safety protocols or procedures at the Karolyi Ranch, and failed to provide any supervision for minor gymnasts training at the Karolyi Ranch.

10. At all times relevant to the Plaintiff's sexual abuse at the hands of NASSAR, Defendant USOC was responsible for the Plaintiff's supervision while competing at the Olympics, the Olympic Trials, and the World Artistic Gymnastics Championships and trainings for such. Despite being the body responsible for the Plaintiff's safety during these events, including, being responsible for her supervision, medical care, and well-being, Defendant USOC provided entirely inadequate or effective measures to ensure her protection from the risk of sexual abuse, either at

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

the events or in her living quarters, where sexual abuse by NASSAR occurred. Despite competing in Australia, Japan, the United Kingdom and the Netherlands (among other international sites), the Plaintiff ALY RAISMAN was either provided no supervision while medical treatment was performed in her living quarters by NASSAR or USAG employee Debbie Van Horn was present for such treatment. Based on information, and therefore belief, despite Ms. Van Horn being represented as a qualified medical professional, she was not properly trained to supervise NASSAR, not given mandate to do so, and was otherwise present for sexually abusive treatments that NASSAR would perform, without reporting such to law enforcement or the proper authorities. This is how and why NASSAR was allowed solitary access to these minors, including the Plaintiff ALY RAISMAN, or alternatively, was allowed to abuse minors (such as the Plaintiff) in the presence of USAG staff (Ms. Van Horn).

11. In 2010, during the Plaintiff ALY RAISMAN's sexual abuse at the hands of NASSAR, Defendant USOC convened what it termed the "Working Group for Safe Training Environments" in order to address, among many things, physical and sexual abuse of amateur athletes in National Governing Bodies ("NGB"). It was not until 2011, after this commission met, that Defendant USOC hired an individual to head its "SafeSport" program and not until 2012 that a "SafeSport" Handbook was adopted and promulgated safeguards and safety protections for minor athletes, from the ravages of sexual abuse. Despite only instituting these SafeSport policies in 2012, Defendant USOC was acutely aware of the ravages of sexual abuse posed to minors in amateur sports, **for at least a decade prior to this SafeSport program being created**, as they were informed by former Defendant USAG President, Robert "Bob" Colarossi. *See infra.*

12. As a requirement for NGBs, such as Defendant USAG, to remain in "good standing" with Defendant USOC, Defendant USOC policies require that USAG "…1) comply with the safe sport policies of the corporation and with the policies and procedures of the independent safe sport organization designated by the corporation to enhance safe sport practices and to investigate and resolve safe sport violations (no exceptions to this requirement shall be allowed unless granted by the CEO, or his or her designee, after allowing the [NGB] or PSO to present the reasons for such exception)…" The Plaintiff is informed and believes, and on that basis alleges,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

that the Safe Sport program was introduced in or around 2011, and that such policies have become more stringent over the years. Nevertheless, the Defendant USOC continued to fail to adequately enforce these policies against Defendant NASSAR, and has continually failed to uphold said policies through proper reporting, supervision, mandates on NGBs (including Defendant USAG), and other preventative procedures. Even as the SafeSport policies state today herein, Defendant USOC still failed to uphold these policies and procedures, had they been in-place at the commencement of ALY RAISMAN's sexual abuse. Defendant USOC has and had a culture and atmosphere that conceals known and suspected sexual abusers, which transcends all policies and procedures that are set in-place. For this reason, Defendant USOC has a practice and culture of ignoring its own internal rules and mandates for NGBs, in order to protect its reputation and blind itself to known abusers within the ranks of NGBs for which it is responsible.

13. Moreover, the Defendant USOC currently promulgates the SafeSport policies that prevent "...USOC employees, coaches, contracted staff, volunteers, board members, committee and task force members, and other individuals working with athletes or other sport participants while at an OTC, whether or not they are employees of the USOC" and "...[a]thletes training and/or residing at a USOC Olympic Training Center" from engaging in sexually abusive misconduct, including "child sexual abuse" and "sexual misconduct." *See* USOC Safe Sport Policies, Section II(c). SafeSport policy also has policies for identifying "grooming" behaviors, which it defines as, "...the most common strategy used by offenders to seduce their victims."

14. Subsequent to sometime in 2012, Plaintiff is informed and believes and on that basis alleges that these policies (or prior versions that were similar or less restrictive) were in effect at Defendant USOC, and applied to Defendant USAG. Despite the existence of these policies after 2012, Defendant USOC allowed Defendant NASSAR to continue to participate with minor children at Defendant USAG, the NGB for Women's Gymnastics, and failed to adequately enforce these policies, or mandate that Defendant USAG enforce these policies. Due to its systemic and knowing failure to enforce these policies, the Plaintiff was sexually harassed, abused, and molested by Defendant NASSAR; an individual who was subject to these policies. Plaintiff is informed, and on that basis, believes that Defendant USAG was at all times in "good standing" with Defendant

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

USOC, despite failing to adhere to, and enforce the SafeSport policies, which it violated by allowing Defendant NASSAR access to minor gymnasts, including the Plaintiff ALY RAISMAN. Furthermore, in failing to report suspected child abuse of Defendant NASSAR and/or failing to enforce policies and procedures to prevent said sexual abuse of minors, the Defendant USOC prevented the Plaintiff and her parents from avoiding the sexual abuse of the Plaintiff and/or ceasing it sooner.

15. Further, Defendant USOC was required to ensure that NGBs, including Defendant USAG, ensure that "**proper safety precautions have been taken to protect the personal welfare of the athletics and spectators at the competition**." 36 *U.S.C.* §§220525(b)(4)(F). Moreover, as part of an NGB's mandate from the Defendant USOC, it was to, "**encourage and support research, development, and dissemination of information in the areas of sports medicine and sports safety**." 36 *U.S.C.* §220524(9). Had Defendant USOC performed its mandate reasonably, diligently, and in accord with its duty to protect minor children under both Federal and California Law, Defendant NASSAR would have been investigated, sanctioned, and/or removed from Defendants USAG, USOC, and others, and never have been placed in solitary contact with the Plaintiff. Defendant USOC never adequately or reasonably enforced these policies, thus, the sexual abuse perpetrated by Defendant NASSAR on the Plaintiff, as well as hundreds of other minor girls, was a natural, probable and foreseeable outgrowth of Defendant USOC's dereliction of its duties. Defendant USOC willfully blinded itself and its officers, agents, employees, and servants, to ravages of sexual abuse that were rampant in amateur sports and in organizations for which it was responsible to supervise, including Defendant USAG.

16. In March of 2017, under the United States Senate Judiciary Committee's inquiry into the failure of the Defendants USAG and USOC in protecting gymnasts from sexual assault, specifically centered around Defendant NASSAR, the Defendant USOC's president publicly admitted, "[t]he Olympic community failed the people it was supposed to protect."

17. Plaintiff is informed, and believes, and on that basis alleges that Defendant USOC was aware, at the highest levels of its organization, that Defendant NASSAR had molested Olympian and National Team level gymnasts who participated with Defendant USAG, an NGB

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

under Defendant USOC's charter, while Defendant NASSAR was permitted to return to his medical practice at Michigan State University ("MSU") without MSU being warned, advised or otherwise contacted by Defendants USOC or USAG regarding Defendant USOC's knowledge of NASSAR's sexual abuse of elite, minor gymnasts. Plaintiff is informed and believes, and on that basis alleges that despite having actual knowledge of Defendant NASSAR's molestation of minor gymnasts as early as 2015, Defendant USOC concealed their involvement with Defendant USAG, concealed its knowledge of Defendant NASSAR's sexual misconduct with minor children, and ultimately, misdirected the United States Senate into believing that Defendant USOC had only failed to protect minor gymnasts through lack of oversight. Plaintiff is informed and believes, and on that basis alleges, that Defendant USOC knew that NASSAR had been removed from Defendant USAG for allegations of child molestation as early as 2015 (as it was Defendant USOC's custom and practice to necessarily learn of reports of child molestation by a NGB employee, like those made to Defendant USAG in 2015) given that Defendant USOC was responsible for the supervision of Defendant USAG. Nonetheless, Defendant USOC had representatives present at the March 2017 Senate Judiciary Committee Hearing and concealed their prior knowledge of Defendant NASSAR being a pedophile and sexual abuser; leaving the Senators, those present, and the public with the false impression that Defendant USOC simply failed to implement proper procedures to prevent abuse. During this hearing, and as early as 2015, Defendants USOC, USAG and PENNY had knowledge that Defendant NASSAR had abused young girls, and that he continued to sexually abuse young girls for over another year at MSU, without notifying, informing, or otherwise communicating this knowledge to MSU.

18. Under California *Penal Code* § 11165.7, Defendant USOC is an organization whose employees, agents, and/or servants are legally "mandated reporters", considering that Defendant USOC is a youth recreational program and Defendant USOC's employees' duties require direct contact and supervision of children.

**DEFENDANT, USA GYMNASTICS ("USAG")**

19. USAG, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Indiana. Plaintiff is informed and believes,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

and on that basis alleges that USAG was incorporated in the state of Texas and/or Arizona. Defendant USAG is the NGB for gymnastics in the United States, as designated and permitted by Defendant USOC under the Ted Stevens Amateur Sports Act, and selects and trains the United States gymnastics teams for the Olympics and World Championships, promotes and develops gymnastics locally and nationally, and serves as a resource center for members, clubs, fans and gymnasts throughout the United States. USAG has more than 174,000 athletes and professional members, more than 148,000 athletes registered in competitive programs, as well as more than 25,000 professional, instructor and club members. Approximately 4,000 competitions and events throughout the United States are sanctioned annually by USAG. USAG was the primary entity owning, operating and controlling the activities and behavior of its employee agents, including, but not limited to NASSAR. USAG is also the entity that selects gymnasts for the US National and Olympic Teams.

20. The bylaws of Defendant USAG, or similar bylaws previously enacted, were made in conformance and under the mandate of Defendant USOC, and were intentioned at protecting minor gymnasts, including ALY RAISMAN from the ravages of sexual abuse, molestation and harassment; a known, foreseeable and palpable risk posed to minor athletes in amateur sports. Nevertheless, despite these bylaws, rules, policies and procedures purportedly being in effect at Defendant USAG, Defendant USOC never ensured, audited or checked to confirm that these policies were effective and being implemented properly, adequately and in conformance with the standard of care. Had Defendant USOC upheld its duties under Federal Law (specifically, the Ted Stevens Act) in ensuring National Team members, including the Plaintiff ALY RAISMAN, were provided proper medical care and supervision, and that they were properly supervised at competitions and the National Training Center (the Karolyi Ranch in Huntsville, Texas), then the dozens of molestations suffered by ALY RAISMAN and numerous other gymnasts could have been avoided.

21. Under California *Penal Code* § 11165.7, USAG is an organization whose employees, agents, and/or servants are legally "mandated reporters", considering that Defendant

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

USAG is a youth recreational program and USAG's employees' duties require direct contact and supervision of children.

**DEFENDANT, STEPHEN "STEVE" PENNY**

22. Defendant STEVE PENNY (hereinafter "PENNY") at all times mentioned herein was and is an adult male individual, who Plaintiff is informed and believes lived in the State of Indiana during the period of time during which the sexual abuse and harassment alleged herein took place and is currently a citizen of the State of Indiana. Defendant PENNY was the President of Defendant USAG charged with the overall management and strategic planning for the organization. Plaintiff is informed and believes and, on that basis, alleges that Defendant PENNY oversaw a wide-ranging, calculated concealment of numerous instances, complaints, and allegations of sexual abuse and misconduct among the participants and members of Defendant USAG. Through this conduct, Defendant PENNY's actions and inactions enabled and ratified the sexual abuse by Defendant NASSAR against Plaintiff and other participants and members of Defendant USAG and fueled the ongoing concealment of abuse at Defendant USAG, making it more unlikely for victims (such as the Plaintiff) to obtain much needed medical and/or psychological treatment. Plaintiff is informed and believes that Defendant PENNY served as President of Defendant USAG from in or around 2005 to 2017. At all times herein alleged, Defendant PENNY was an employee, agent, and/or servant of Defendant USAG, and/or was under their complete control and/or active supervision.

**DEFENDANT, PAUL PARILLA**

23. Defendant PAUL PARILLA (hereinafter "PARILLA") at all times mentioned herein was and is an adult male individual, who Plaintiff is informed and believes lived in the State of California, County of Orange, during the period of time during which the sexual abuse and harassment of ALY RAISMAN by NASSAR alleged herein took place and is currently a citizen of the State of California. Defendant PARILLA was a board member of USAG from in or around 1999 to 2018, and was Chairman of the USAG board from approximately 2015 to in or around January of 2018. Plaintiff is informed and believes and, on that basis, alleges that Defendant PARILLA oversaw a wide-ranging, calculated concealment of numerous instances, complaints,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

and allegations of sexual abuse and misconduct among the participants and members of Defendant USAG. Through this conduct, Defendant PARILLA's actions and inactions enabled and ratified the sexual abuse by Defendant NASSAR against Plaintiff and other participants and members of Defendant USAG and fueled the ongoing concealment of abuse at Defendant USAG, making it more unlikely for victims (such as the Plaintiff) to obtain much needed medical and/or psychological treatment. Plaintiff is informed and believes that Defendant PARILLA served as Chairman of the Board from 2015 to present. At all times herein alleged, Defendant PARILLA was an employee, agent, and/or servant of Defendant USAG, and/or was under their complete control and/or active supervision.

**DEFENDANT, LARRY NASSAR**

24. Defendant NASSAR, the Perpetrator, at all times mentioned herein was and is an adult male individual, who lived in the State of Michigan during the period of time during which the sexual abuse, harassment, and molestation of the Plaintiff alleged herein took place and is currently a citizen of the State of Michigan. Plaintiff is informed and believes that the NASSAR was accepted onto the staff of USAG as a trainer in 1986 and then as the National Medical Director and the National Team Physician for the women's gymnastics team in 1996. NASSAR was also responsible for coordinating the care for USAG and for participants and members at every national and international competition, and would routinely travel to National and International competitions. NASSAR continued to function in this capacity at USAG until in or around the middle of 2015. Moreover, it is upon information and belief, that as the National Team Doctor for USAG, which was chartered via Defendant USOC, NASSAR was the individual responsible for maintaining USAG's compliance with the medical requirements, policies and procedures set forth by Defendant USOC. Nevertheless, Defendant USOC failed to provide supervision, oversight, and any meaningful inhibition to limit NASSAR's access to minor children. Defendant NASSAR was retained by Defendants USAG, USOC, PENNY, PARILLA, and DOES 1 through 500 as an Osteopathic Physician and certified athletic trainer to provide care, treatment, and athletic training to the Defendants USAG and USOC, and its participants, many of which were minors while in his care. It was through this position of trust and confidence, that Defendant NASSAR exploited ALY

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

RAISMAN, in perpetrating his sexual abuse and harassment upon her. All of the sexually abusive and harassing conduct alleged herein was done for Defendant NASSAR's sexual gratification and was based upon the gender of ALY RAISMAN.

25. It is on information and reasonable belief that NASSAR, using his apparent authority and position within Defendant USAG and USOC over the minor participants in his charge, that Defendant NASSAR sexually abused and harassed multiple other members of the United States Women's Olympic Gymnastics Team and National teams, over the nearly 30 years in which Defendant NASSAR has been affiliated with Defendants USAG, USOC and DOES 1 through 500.

26. At all times herein alleged, NASSAR was an employee, agent, and/or servant of USAG, Defendant USOC, and DOES 1 through 500, and/or was under their complete control and/or active supervision.

27. In the event DOE 1 be prosecuted and convicted of a felony for the conducted alleged herein, the Plaintiff requests leave to amend the instant Complaint, such that a request for attorneys' fees can be made against DOE 1 pursuant to *Code of Civil Procedure* § 1021.4.

**DEFENDANTS, DOE 1 THROUGH 500**

28. Defendants DOES 1 through 500, inclusive, and each of them, are sued herein under said fictitious names. Plaintiff is ignorant as to the true names and capacities of DOES 1 through 500, whether individual, corporate, associate, or otherwise, and therefore sue said Defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will request leave of Court to amend this Complaint to state their true names and capacities herein.

29. Defendants USOC, USAG, NASSAR, PENNY, PARILLA, and DOES 1 through 500, inclusive, are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to all specifically named Defendants as well as those fictitiously named herein.

30. Plaintiff is informed and believe, and on that basis, allege that at all times mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences

herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by all said Defendants.

31. At all times mentioned herein, each and every Defendant NASSAR was an employee, agent, and/or servant of USAG, Defendant USOC, and DOES 1 through 500, inclusive, and/or was under their complete control and/or active supervision. Defendants and each of them are individuals, corporations, partnerships and/or other entities that engaged in, joined in, and conspired with other Defendants and wrongdoers in carrying out the tortuous and unlawful activities described in this Complaint.

32. Plaintiff is informed and believe, and on that basis, allege that at all times mentioned herein, there existed a unity of interest and ownership among Defendants and each of them such that any individuality and separateness between Defendants, and each of them, ceased to exist. Defendants and each of them were the successors-in-interest and/or alter egos of the other Defendants, and each of them, in that they purchased, controlled, dominated and operated each other without any separate identity, observation of formalities, or other manner of division. To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and injustice.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

33. Plaintiff is informed and believes, and on that basis, alleges that at all times mentioned herein, Defendants USOC, USAG, NASSAR, PENNY, PARILLA, and DOES 1 through 500 were the agents, representatives and/or employees of each and other. In doing the things hereinafter alleged, Defendants and each of them were acting within the course and scope of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

34. Plaintiff is informed and believes, and on that basis alleges that at all times mentioned herein, Defendants USOC, USAG, NASSAR, PENNY, PARILLA, and DOES 1 through 500 were the trustees, partners, servants, joint venturers, shareholders, contractors, and/or employees of each other, and the acts and omissions herein alleged were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission

and consent of each and every other Defendant and that said conduct was thereafter ratified by each and every other Defendant, and that each of them is jointly and severally liable to Plaintiff.

**SEXUAL ABUSE OF ALY RAISMAN AND RESULTING LIFELONG DAMAGES**

35. By his position within the Defendants' institutions, Defendants and NASSAR demanded and required that Plaintiff respect Defendant NASSAR, in his position as team physician for USAG, authorized by USOC.

36. NASSAR did sexually abuse, harass and molest the ALY RAISMAN, who was a minor child at the time of the acts at-issue.

37. The sexual harassment and abuse of Plaintiff by the Perpetrator (NASSAR), outlined below, took place while Defendant the Perpetrator (NASSAR) was the team physician of Defendant USAG and under the control of Defendants USOC, PENNY, PARILLA, and DOES 1 through 500. Plaintiff was a participant and member of Defendants USAG, USOC, and DOES 1 through 500, while the Perpetrator (NASSAR) was serving as an agent and employee of Defendants in his capacity as team physician:

a. In his capacity as a team physician with Defendants USOC, USAG, and DOES 1 through 500, the Perpetrator (NASSAR) was given custody and supervision of minors, including Plaintiff. The Perpetrator (NASSAR) used this position to coerce children to concede to his sexual suggestions, using his authority and position of trust to exploit them physically, sexually, and emotionally;

b. Plaintiff became a member and participant of USAG, and a part of the Junior National Team for USAG in 2009. Plaintiff soon formed a relationship with the Perpetrator (NASSAR), USAG's team physician. At this time, in or around 2010, the Perpetrator (NASSAR) commenced the process of "grooming" Plaintiff for later physical, sexual and emotional abuse. Plaintiff is informed and believes the Perpetrator (NASSAR) would use the guise of care, athletic training, osteopathy, and kinesiology to normalize intimate, inappropriate, and sexually abusive contact with Plaintiff. Plaintiff is informed and believes the Perpetrator (NASSAR) would enter the living quarters of the Plaintiff ALY RAISMAN and other gymnasts at the Karolyi Ranch, hotel rooms at meets, in training rooms, and at other locations, placing Plaintiff under the impression this inappropriate contact was part of treatment. During this period, Plaintiff was a patient under the Perpetrator's (NASSAR) direct supervision and control.

c. Plaintiff is informed and believes the Perpetrator's (NASSAR) physical and sexual abuse of Plaintiff commenced after the grooming of Plaintiff began, and occurred dozens of times while the team was traveling and before and after competitive meets from in or around 2010 to 2012, and in or around 2015. Specifically, the Plaintiff was sexually abused by NASSAR in Texas at the Karolyi Ranch, in Santa Clara County in California, and at numerous locations around the country, as well as internationally in Australia, Japan, in the United Kingdom and in the Netherlands. During this period, Plaintiff was a participant, member, and patient under the Perpetrator's (NASSAR) and Defendants' direct supervision and control.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

> Using his position as team physician, the Perpetrator (NASSAR) would interact with Plaintiff under the guise of providing her care and treatments necessary for her to compete as a world-class, Olympic medal-winning gymnast. Under these circumstances, the Perpetrator (NASSAR) placed his bare hand on and near the Plaintiff's unclothed vagina and anus, on multiple occasions, in Plaintiff's assigned living quarters, without any supervision or a chaperone. Further, NASSAR, on numerous occasions, had an erection while performed the claimed medical treatment. Plaintiff is informed and believes that the Perpetrator's (NASSAR) sexual abuse, molestation, and harassment of Plaintiff occurred on the premises of Defendants USAG, USOC, in hotels around the world, and various other locations including, but not limited to in living quarters, in training facilities, in gyms.

38. Plaintiff is informed and believes, and on that basis alleges, that such conduct by Defendant NASSAR was based upon Plaintiff's gender, and was done for Defendant NASSAR's sexual gratification. These actions upon ALY RAISMAN were performed by Defendant NASSAR without the free consent of Plaintiff, as ALY RAISMAN was a young child, and could therefore not give valid legal consent.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFF

39. At all times material hereto, Plaintiff was a minor participant and member of Defendant USAG, USOC and DOES 1 through 500, and was under their complete control, dominion, and supervision. Defendant NASSAR worked for, was employed by, and an agent/servant of Defendants USAG, USOC and DOES 1 through 500 when NASSAR came into contact with ALY RAISMAN.

40. At all times material hereto, Defendant NASSAR was under the direct supervision, management, agency and control of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, inclusive. Defendant NASSAR was the team physician of Defendant USAG and for Team USA, under the dominion of Defendant USOC. While a team physician at Defendant USAG, NASSAR's employment duties included coordinating the care for Defendant USAG at every national and international competition, providing individual care and providing for the physical needs and well-being of participants and members of Defendant USAG (and in accord with Defendant USOC policies, procedures, and mandates), and care including but not limited to osteopathic adjustments and kinesiology treatment to participants and members of Defendant USAG, which included ALY RAISMAN. ALY RAISMAN was a participant and member of Defendant USAG, and it is under these circumstances that ALY RAISMAN came to be under the

direction and control of Defendant NASSAR, who used his position of authority and trust to molest and sexually abuse ALY RAISMAN.

41. As a member and participant of Defendant USAG and USOC while NASSAR was a team physician, the ALY RAISMAN was under Defendant NASSAR's direct supervision, control and care, which created a special, confidential, and fiduciary relationship between ALY RAISMAN, her parents, and Defendant NASSAR. Because of such relationship, Defendant NASSAR owed Plaintiff a special duty of care. Additionally, as the employers and supervisors of NASSAR, with knowledge that he was in contact with and providing care to children, Defendants USAG, USOC, PENNY, PARILLA, and DOES 1 through 500 were also in a special, confidential, and fiduciary relationship with Plaintiff, owing her a duty of care.

42. By assigning Defendant NASSAR as team physician of Defendant USAG under the mandated and control of Defendants USOC and DOES 1 through 500, Defendant USOC represented to the community and participants and members of Defendant USAG that NASSAR was safe, trustworthy, and of high moral and ethical repute, such that parents of participants and members need not worry about having NASSAR interact with, and provide care to their minor children. Defendants did so in order to preserve their own public image and reputation, so they could retain past participants and members and recruit new participants and members, thus allowing donations and other financial support to continue flowing into their coffers for financial gain.

43. Plaintiff is informed and believes, and on that basis, alleges that Defendants USAG, USOC and DOES 1 through 500 knew or should have known that Defendant NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to ALY RAISMAN and her parents, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff.

44. Plaintiff is informed and believes, and on that basis, alleges that Defendants knew or should have known that sexually abusive staff, such as Defendant NASSAR, were violating

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Defendants USOC and USAG policies, without enforcement or abatement, and were continually allowed to be in contact with minor children, such as ALY RAISMAN. As early as 1999, Defendant USOC was placed on notice by former Defendant USAG president Bob Colarossi, who wrote a letter to the USOC, explaining that the safety procedures and policies that USOC required USAG to follow, were part of a "...fundamentally flawed process..." and that at USOC there was an "...**apparent indifference to the welfare of young children manifest in the Committee's actions.**" *See* Exhibit A as the Letter from Robert Colarossi to USOC. It was not until 11 years later, that Defendant USOC created the SafeSport program and issued a handbook detailing specific procedures for preventing sexual abuse of minors, and access to minors by sexual abusers. Despite instituting this handbook and program, Defendant USOC maintained its course and culture of ignoring abuse, ignoring its internal policies and procedures, and placing minors in the way of danger.

45. Plaintiff is informed and believes and, on that basis, alleges Defendants knew of, or should have known of, Defendants NASSAR's propensity and disposition to engage in sexual misconduct with minors before he sexually abused and molested ALY RAISMAN, and knew of the probability that NASSAR would molest minors with whom he came into contact, such as ALY RAISMAN.

46. Defendant failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Defendant NASSAR in the future, including avoiding placement of Defendant NASSAR in a position where contact and interaction with children is an inherent function. Defendants ignored and suppressed the past sexual misconduct Defendant NASSAR had engaged in, and concealed that information from ALY RAISMAN and her family.

47. Plaintiff is informed and believes, and on that basis alleges, that Defendants were apprised, knew or should have known of and/or were put on notice of Defendant NASSAR's past sexual abuse of children, past claims and/or investigations, and his propensity and disposition to engage in such unlawful activity and unlawful sexual activity with minor participants and members such that Defendants knew or should have known that Defendant NASSAR would commit wrongful sexual acts with participants and members, including ALY RAISMAN. Plaintiff is

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

informed and believes, and on that basis alleges that personnel and/or employment records and other records of Defendants' reflect numerous incidents of inappropriate sexual contact and conduct with minor participants and members by Defendant NASSAR and other professionals, employees, assistants, agents, supervisors and others, including incidents occurring both on and off the physical premises of such Defendants and at national and international meets. Based on these records, Defendants knew and/or should have known of Defendant NASSAR's history of sexual abuse, past claims and/or past investigations, and his propensity and disposition to engage in unlawful activity and unlawful sexual activity with participants and members such that Defendants knew or should have known that Defendant NASSAR would commit wrongful sexual acts with those minor participants and members, including ALY RAISMAN.

48. Plaintiff is informed and believes, and on that basis alleges, that Defendant NASSAR was repeatedly informally censured, disciplined and/or reprimanded by Defendants USAG, USOC, PENNY, PARILLA, and DOES 1 through 500, for taking an inordinate number of photographs of young girls, who were gymnasts. This conduct by Defendant NASSAR was in direct contravention of his duties set forth by the Defendants USAG, USOC, PENNY, PARILLA, and DOES 1 through 500, and was not communicated to the Plaintiff or her family. This conduct was not further investigated, was not reported to law enforcement or child welfare authorities, and was never communicated to the Plaintiff, her parents or other gymnasts, in direct violation of Defendant USAG's mandate under the Defendant USOC's policies, procedures and rules. Subsequent to NASSAR's initial arrest in 2016, thousands of images of child pornography were located by Federal law enforcement on his electronic devices, and Defendant NASSAR pleaded guilty to such possession of child pornography in July of 2017. Had Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 effectively implemented their safety policies and procedures, damage to the Plaintiff could have been minimized and NASSAR's conduct could have been stopped earlier, but it was not.

49. Because of the relationship between Plaintiff and Defendants, Defendants had an obligation and duty under the law not to hide material facts and information about NASSAR's past, and his deviant sexual behavior and propensities. Additionally, Defendants had an affirmative

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

duty to inform, warn, and institute appropriate protective measures to safeguard minors who were reasonably likely to come in contact with Defendant NASSAR, including ALY RAISMAN at the time. Defendants willfully refused to notify, give adequate warning and implement appropriate safeguards, thereby creating the peril that ultimately damaged ALY RAISMAN.

50. Plaintiff is informed and believes, and on that basis alleges, that prior to ALY RAISMAN's sexual abuse by Defendant NASSAR, Defendants engaged in a pattern and practice of employing sexual abusers. Defendants concealed these facts from participants and members, their parents, the Plaintiff's community, the gymnastics community, the public at large, other NGB's, the United States government, various local governments, and law enforcement agencies.

51. As is set forth herein, Defendants and each of them have failed to uphold numerous mandatory duties required of them by state and federal law, as well as their own internal written policies and procedures, including:

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

- Duty to use reasonable care to protect participants and members from known or foreseeable dangers
- Duty to inform the Plaintiff ALY RAISMAN and her parents of the known risks to the health and well-being of their daughter while in Defendant's USAG and/or USOC sponsored, authorized, and supervised programs, events and trainings;
- Duty to enact policies and procedures that are not in contravention of the Federal Civil Rights Act, section 1983 and the 14th amendment of the United States Constitution;
- Duty to protect participants and members and staff, and provide adequate supervision;
- Duty to ensure that any direction given to participants and members is lawful, and that adults act fairly, responsible and respectfully towards participants and members;
- Duty to properly train staff so that they are aware of their individual responsibility for creating and maintaining a safe environment;
- Duty to review the criminal history of applicants and current employees;
- Duty to provide diligent supervision over minors;
- Duty to act promptly and diligently and not ignore or minimize problems.
- Duty to report suspected incidents of child abuse and more specifically childhood sexual abuse (*Penal Code* sections 11166, 11167).
- Duty to provide adequate and safe medical care pursuant to 36 U.S.C. §§220525(b)(4)(E).

52. Defendants and each of them had and have a duty to protect participants and members, including ALY RAISMAN. Defendants were required to, and failed, to provide adequate supervision, and failed to be properly vigilant in seeing that supervision was sufficient at Defendants USAG and USOC to ensure the safety of ALY RAISMAN and others.

53. Despite having a duty to do so, Defendants failed to adequately train and supervise all staff to create a positive and safe environment, specifically including training to perceive, report and stop inappropriate sexual conduct by other members of the staff, specifically including NASSAR with children.

54. Defendants failed to enforce their own rules and regulations designed to protect the health and safety of the participants and members. Further, they failed to adopt and implement safety measures, policies and procedures designed to protect minor children such as Plaintiff's child from the sexually exploitive and abusive acts of their agents and employees such as NASSAR.

55. Plaintiff is informed and believes and, on that basis, alleges that as part of Defendants' conspiratorial and fraudulent attempt to hide NASSAR's propensity to sexually abuse children, and prior sexual misconduct with children, from public scrutiny and criminal investigation, Defendants implemented various measures designed to make NASSAR's conduct harder to detect and ensure minors with whom he came into contact, such as ALY RAISMAN, would be sexually abused, including:

a. Permitting NASSAR to remain in a position of authority and trust after Defendants knew or should have known that he was a molester of children;

b. Placing NASSAR in a separate and secluded environment, at USAG and USOC authorized camps and events, including assigning him unfettered access and control over minor participants and members that included individual and private examinations, private osteopathic adjustments without a chaperone, and allowing NASSAR to physically and sexually interact with the children, including ALY RAISMAN;

c. Failing to disclose NASSAR's prior record of misconduct, sexual abuse, harassment and molestation and his propensity to commit such acts towards participants and members in USAG's and USOC's program, the public at large, and law enforcement;

d. Allowing NASSAR's unsupervised and un-controlled access to minors, including ALY RAISMAN;

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

e. Holding out NASSAR to ALY RAISMAN, other participants and members of USAG and USOC, and the public at large as a trustworthy and honest person of high ethical and moral repute who was capable and worthy of being granted unsupervised access to the children of USAG;

f. Failing to investigate or otherwise confirm or deny such facts about NASSAR including prior arrests, charges, claims and investigations for sexual abuse;

g. Failing to inform, or concealing from Plaintiff and law enforcement officials the fact that ALY RAISMAN and others were or may have been sexually abused, harassed and molested, after Defendants knew or should have known that NASSAR may have sexually abused ALY RAISMAN or others, thereby enabling ALY RAISMAN to continue to be endangered and sexually abused, harassed, molested, and/or creating the circumstance where ALY RAISMAN and others were less likely to receive proper medical treatment, thus exacerbating the harm to ALY RAISMAN;

h. Holding out NASSAR to Plaintiff and to the community as being in good standing and trustworthy;

i. Cloaking NASSAR's prior sexual misconduct with children within the facade of normalcy, thereby disguising the nature of his sexual abuse and contact with minors;

j. Failing to take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by NASSAR such as avoiding placement of NASSAR in functions or environments in which his solitary contact with children was inherent;

k. Failing to put in place a system or procedure to supervise or monitor physicians, athletic trainers, and agents to insure they do not molest or abuse minors in Defendants' care.

l. Failing to investigate Nassar's background adequately.

m. Allowing NASSAR to practice medicine without a Texas medical license at the National Training Center.

n. Failing to implement any reasonable, meaningful, or adequate supervision policies, practices or procedures at the National Training Center, which would have prevented NASSAR solitary access to minors, including the Plaintiff.

56. By his position within the Defendants' institutions, NASSAR attained a position of influence over ALY RAISMAN, her parents, and others. Defendants' conduct created a situation of peril that was not, and could not be appreciated by ALY RAISMAN. By virtue of Defendants' conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose and hide NASSAR's past and present conduct from the community, the public at large and law enforcement, Defendants allowed NASSAR to remain in a position of influence where his unsupervised or negligently supervised conduct with minor participants and members made the molestation and abuse of minor participants and members possible.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

57. During the period ALY RAISMAN was being sexually abused and harassed by NASSAR, Defendants had the authority and ability to prevent such abuse by removing Defendant NASSAR from his position as team physician at Team USA, USAG and in his status with the USOC. They failed to do so, allowing the abuse to occur and to continue unabated. Plaintiff is informed and believes and, on that basis, alleges that this failure was a part of Defendants' conspiratorial plan and arrangement to conceal NASSAR's wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and abuse, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement. Such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants, while fostering an environment where such abuse could continue to occur.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

58. As a direct result of the sexual harassment and abuse that ALY RAISMAN suffered from Defendant NASSAR, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 failing to inform the ALY RAISMAN (or her parents) of the danger posed to her by NASSAR, Plaintiff has had difficulty in meaningfully interacting with others, including those in positions of authority over Plaintiff including physicians, athletic supervisors, athletic trainers, as well as their servants and agents. Plaintiff has been limited in her ability to meaningfully interact with others due to the trauma of childhood sexual abuse, and the upset of having known that they could have prevented such, had Defendants conveyed the appropriate information. This inability to interact creates conflict with Plaintiff's values of trust and confidence in others, and has caused Plaintiff substantial emotional distress, anxiety, nervousness and fear. As a direct result of this conduct, Plaintiff suffered immensely, including, but not limited to, encountering issues with a lack of trust, various negative psychological and emotional sequelae, depressive symptoms, anxiety, and nervousness. Having been one of the most famous gymnasts in United States (and World) history, ALY RAISMAN lost millions of dollars in economic damages, as a result of her sexual abuse at the hands of NASSAR, and continues to suffer from such loss.

59. As a direct and proximate result of Defendants' tortious acts, omissions, wrongful conduct and breaches of their duties, Plaintiff's employment and professional development has

been adversely affected. Plaintiff has lost wages, endorsements, and many financial opportunities and will continue to lose wages in an amount to be determined at trial. Plaintiff has suffered substantial economic injury, all to Plaintiff's general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

60. As a further direct and proximate result of Defendants' wrongful actions, as herein alleged, Plaintiff has been hurt in their health, strength and activity. Plaintiff has sustained permanent and continuing injury to their nervous system and person, which has caused and continues to cause great mental, physical and nervous pain, suffering, fright, upset, grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

61. In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, USAG, PENNY, PARILLA, NASSAR and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiff is informed and believes, and on that basis alleges, that specifically, the Defendants acted in concert, and under their authority as child care providers, with reckless disregard for the concern of the minor participants in its charge, in order to further financially benefit their respective business' growth. The Defendants acted intentionally in creating an environment that harbored molesters, put the vulnerable minor participants at-risk of harm, ignored clear warning signs and their duties to report sexual abusers and molesters in their ranks, to maintain a façade of normalcy, in order to maintain its funding and provide further financial growth of Defendants USAG, USOC, and PENNY and PARILLA, individually, on the international level. The safety of the minor participants that were entrusted to Defendant USAG and represented as being protected through Defendant USOC, was compromised due to Defendants desire to maintain the status quo of the Defendants USAG and USOC organizations, and avoid any public scrutiny for its misconduct. Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Defendants. Plaintiff is therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, PENNY, PARILLA, NASSAR and DOES 1 through 500.

**FIRST CAUSE OF ACTION**
**SEXUAL HARASSMENT: CIVIL CODE § 51.9**
**(Plaintiff ALY RAISMAN Against Defendants USAG, USOC, NASSAR and DOES 1 through 500)**

62. The Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

63. During the Plaintiff ALY RAISMAN's time as a minor gymnast under the care, control and/or mandate of Defendants USOC, USAG and DOES 1 through 500, NASSAR recklessly and wantonly made sexual advances, solicitations, requests, demands for sexual compliance of a hostile nature based on the Plaintiff ALY RAISMAN's gender that were unwelcome, pervasive and severe. NASSAR intentionally, recklessly and wantonly did acts which resulted in harmful and offensive contact with intimate parts of the Plaintiff ALY RAISMAN's person, including but not limited to NASSAR using the authority and trust inherent in his position as an Olympic Doctor to exploit her physically, psychologically and emotionally. These acts were done for NASSAR's sexual gratification; all while NASSAR was acting in the course and scope of his agency/employment with Defendants USAG, USOC, and DOES 1 through 500.

64. The incidents of abuse outlined herein above took place while the Plaintiff ALY RAISMAN was under the care of NASSAR, in his capacity and position as an Olympic Doctor, while acting specifically on behalf of Defendants USOC, and DOES 1 through 500.

65. Because of the Plaintiff ALY RAISMAN's young age, nature of her competitive sport, and relationship with NASSAR as a gymnast at Defendant USAG (under the control and authority of Defendants USOC and USAG), the Plaintiff ALY RAISMAN was unable to easily terminate her doctor-patient relationship with NASSAR.

66. Because of NASSAR's position of authority over Plaintiff ALY RAISMAN, and the Plaintiff ALY RAISMAN's mental and emotional state, and her young age under the age of consent, Plaintiff ALY RAISMAN was unable to, and did not give meaningful consent to such acts.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

67. Even though Defendants USAG, USOC and DOES 1 through 500 knew or should have known of these activities by NASSAR, Defendants USOC, USAG, and DOES 1 through 500 did nothing to investigate, supervise or monitor NASSAR to ensure the safety of Plaintiff ALY RAISMAN. Defendants USAG, USOC and DOES 1 through 500 ratified the sexual misconduct of NASSAR by retaining him in employment after discovering, or ignoring the facts that would have led them to discover, his misconduct.

68. Defendants USOC, USAG, and DOES 1 through 500's conduct was a breach of their duties to the Plaintiff ALY RAISMAN.

69. As a result of the above-described conduct, Plaintiff ALY RAISMAN suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

70. In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, USAG, NASSAR and DOES 1 through 500, acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants USOC, USAG, and DOES 1 through 500. Plaintiff is therefore entitled, to the recovery of punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, and DOES 1 through 500.

**SECOND CAUSE OF ACTION**
**MASHA'S LAW (18 U.S.C. §§2255, 2423(b), 2423(c))**
**(Plaintiff ALY RAISMAN Against Defendants USAG, USOC, NASSAR and DOES 1 through 500)**

71. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

72. Under 18 U.S.C. §§2255, the Plaintiff ALY RAISMAN has a private right of action against NASSAR, and any defendants who are vicariously and/or strictly responsible for NASSAR while abroad perpetrating his sexual assaults against ALY RAISMAN, including Defendants USOC, USAG, and DOES 1 through 500. *See Doe v. Celebrity Cruises, Inc.* (11th Cir. 2004) 394 F.3d 891, 894.

73. Plaintiff ALY RAISMAN is a victim of the federal crime codified as 18 U.S.C. §2423(b), which was perpetrated by NASSAR and provides, "[a] person who travels in interstate commerce or travels into the United States, **or a United States citizen ... who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.**"

74. Furthermore, Plaintiff ALY RAISMAN is a victim of the federal crime codified as 18 U.S.C. §2423(c), which was perpetrated by NASSAR and provides, "**[a]ny United States citizen** ... **who travels in foreign commerce** or resides, either temporarily or permanently, in a foreign country, **and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.**"

75. As alleged herein, Defendant NASSAR travelled with ALY RAISMAN to Europe, Australia, Japan, and across state lines, wherein he sexually harassed, abused, and molested her, when she was under the age of 18 years old and as previously stated herein. Defendant NASSAR travelled with ALY RAISMAN for the sole purpose of engaging in this elicit sexual conduct with her.

76. As a result of the above-described conduct, the Plaintiff ALY RAISMAN suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

77. In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, USAG, and DOES 1 through 500, acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants USAG, USOC and DOES 1 through 500. Plaintiff is therefore entitled, upon proper application to the court, to the recovery of punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, and DOES 1 through 500.

**THIRD CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, NASSAR, PENNY, PARILLA, and DOES 1 through 500)**

78. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

79. Defendants USAG, USOC, PENNY, PARILLA, and DOES 1 through 500's conduct toward Plaintiff, as described herein, was outrageous and extreme.

80. A reasonable person would not expect or tolerate Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 putting NASSAR in positions of authority at Defendants USAG, USOC, or DOES 1 through 500, which enabled NASSAR to have access to minors including Plaintiff ALY RAISMAN, so that he could commit wrongful sexual acts with her, including the conduct described herein above. Plaintiff had great trust, faith and confidence in in Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, which, by virtue of NASSAR and Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's wrongful conduct, turned to fear.

81. Moreover, by failing to report NASSAR or honor any of their legal reporting obligations and by failing to promptly notify the parents of Plaintiff ALY RAISMAN of the abuse of their daughter, Defendants USOC and DOES 1 through 500 knew that Plaintiff would be directly harmed. Under the holding in *Phyllis P.* case, a special relationship and a duty to notify the parents of Plaintiff was stated. Such duty being independent of any duty Defendants USOC, USAG,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

PENNY, PARILLA, and DOES 1 through 500 owed to Plaintiff ALY RAISMAN and is a direct duty owed to the Plaintiff's parents and was thereby created with Plaintiff's parents, whereby Plaintiff's parents are intended or direct victims of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 failures and can recover for any emotional distress proximately caused thereby. Specifically, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 had knowledge of NASSAR's dangerous propensities to sexually abuse children, yet concealed and failed to disclose to Plaintiff ALY RAISMAN this information.

82. A reasonable person would not expect or tolerate Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 to be incapable of supervising and preventing employees of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, including NASSAR, from committing wrongful sexual acts with minor gymnasts including Plaintiff ALY RAISMAN, or to properly supervise NASSAR to prevent such abuse from occurring, or to promptly notify parents or authorities.

83. Defendants USOC, USAG, PENNY, PARILLA, NASSAR, and DOES 1 through 500's conduct described herein was intentional and malicious and done for the purpose of causing, or with the substantial certainty that it would cause Plaintiff ALY RAISMAN and her parents, to suffer humiliation, mental anguish and emotional and physical distress.

84. As a result of the above-described conduct, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

85. In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, USAG, PENNY, PARILLA, NASSAR and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff ALY RAISMAN, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression under California *Civil Code* section

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

3294. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, in a sum to be shown according to proof.

**FOURTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES (*BUSINESS & PROFESSIONS CODE* §17200)**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

86. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

87. Plaintiff is informed and believes and, on that basis,, alleges that Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 have engaged in unlawful, unfair and/or deceptive business practices including allowing NASSAR to engage in repeated harassment of participants and members, including Plaintiff ALY RAISMAN, and failing to take all reasonable steps to prevent harassment and abuse from occurring. The unlawful, unfair and deceptive business practices also included failing to adequately investigate, vet, and evaluate individuals for employment with Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, refusing to design, implement, and oversee policies regarding sexual harassment and abuse of children in a reasonable manner that is customary in similar educational environments. Plaintiff is informed and believes and, on that basis, alleges that Defendants USOC, USAG, and DOES 1 through 500 have engaged in unlawful, unfair and deceptive business practices including concealing sexual harassment, abuse and/or molestation claims by participants and members, such as Plaintiff ALY RAISMAN, so as to retain other participants and members within Defendants USAG, who were not apprised of such illicit sexual misconduct by NASSAR.

88. Plaintiff is informed and believes, and on that basis alleges that Defendants USOC USAG, PENNY, PARILLA, and DOES 1 through 500 engaged in a common scheme, arrangement or plan to actively conceal allegations against sexual abusers who were employees, agents, members, and/or participants at Defendants USAG, USOC, and DOES 1 through 500, such that Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 could maintain their public image, and avoid detection of such abuse and abusers. Plaintiff is informed and believes and thereon alleges that Defendants USOC, USAG, and DOES 1 through 500 actively concealed

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

these allegations, such that Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 would be insulated from public scrutiny, governmental oversight, and/or investigation from various law enforcement agencies, all done in order to maintain the false sense of safety for participants and their families and to perpetuate the program financially.

89. By engaging in unlawful, unfair and deceptive business practices, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 benefitted financially to the detriment of its competitors, who had to comply with the law.

90. Unless restrained, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 will continue to engage in the unfair acts and business practices described above, resulting in great and irreparable harm to Plaintiff and/or other similarly situated participants and members.

91. Plaintiff seeks restitution for all amounts improperly obtained by Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of Plaintiff and all other similarly situated participants and members who were also subjected to Defendant's illegal and unfair business practices.

92. Pursuant to section 17203 of the California *Business and Professions Code* and available equitable powers, Plaintiff is entitled to a preliminary and permanent injunction, enjoining Defendants USOC, USAG, and DOES 1 through 500 from continuing the unlawful and unfair business practices described above. Further, Plaintiff seeks the appointment of a court monitor to enforce its orders regarding client safety. In addition, Plaintiff is entitled to recover reasonable attorneys' fees pursuant to the California *Business and Professions Code* and section 1021.5 of the *California Code of Civil Procedure*.

**FIFTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

93. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

94. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, as childcare custodians representing that they would keep Plaintiff ALY RAISMAN safe, were in a fiduciary relationship with Plaintiff ALY RAISMAN, owing her a special duty of due care. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 are mandated reporters, or organizations required to comply with Mandated Reporting laws, with respect to claims of child abuse and child safety.

95. Moreover, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 owed Plaintiff ALY RAISMAN a statutory, common law and constitutional duty to protect her and guarantee her safety while in their custody, care, and control.

96. The Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 also owed a special duty to ALY RAISMAN's parents. As direct victims for failure to notify of abuse of their minor child (*See Phyllis P. v. Claremont Unified School District*, 183 Cal. App. 3d at 1193) which held that a school district had a special relationship with a parent because the parent was the "real and foreseeable" victim of the defendants' negligent conduct. Direct victims may bring claims where there was a negligent breach of a duty arising out of a preexisting relationship. Any breach committed by the Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 violates this special relationship and duty owed to Plaintiff ALY RAISMAN's parents.

97. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their fiduciary duty by failing to properly supervise NASSAR and take appropriate steps to prevent the lewd and lascivious conduct perpetrated by NASSAR against ALY RAISMAN. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 also failed to report NASSAR pursuant to USOC and USAG policy. Defendants USOC, USAG, and DOES 1 through 500 also failed to implement or follow appropriate policies and procedures to protect minors, including ALY RAISMAN. In addition, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 failed to report NASSAR's abuse or promptly notify ALY RAISMAN's parents.

98. The employees, servants, agents, volunteers or other representatives of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, respectively, willfully and

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

intentionally ignored behavior in NASSAR and complaints against NASSAR that they should have reported due to their responsibility as mandated reporters.

99. As a result of the above-described conduct, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

100. In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression under California *Civil Code* section 3294. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, in a sum to be shown according to proof.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**SIXTH CAUSE OF ACTION**
**CONSTRUCTIVE FRAUD**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

101. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

102. By holding NASSAR out as an agent of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and by allowing him to undertake the physical care and athletic training of minor children such as ALY RAISMAN, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 entered into a confidential, fiduciary, and special relationship with Plaintiff.

103. By holding themselves out as professional organizations for woman's gymnastics, undertaking to select and train national gymnastics teams, enforcing policies, rules, and procedures for gymnasts' safety and facilitating competition both nationally and internationally of ALY

RAISMAN and other minor team participants and members, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 entered into a confidential, fiduciary and special relationship with Plaintiff and other minor gymnasts (as well as their families).

104. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their confidential, fiduciary duty and special duties to Plaintiff by the wrongful and negligent conduct described above and incorporated into this cause of action, and in so doing, gained an advantage over Plaintiff in matters relating to Plaintiff's safety, security and health. In particular, in breaching such duties as alleged, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were able to sustain their status as institutions (or individuals) of high moral repute, and preserve their reputation, all at the expense of Plaintiff's further injury and in violation of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's mandatory duties.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

105. By virtue of their confidential, fiduciary and special relationship with Plaintiff, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 owed Plaintiff a duty to:

a. Investigate or otherwise confirm or deny such claims of sexual abuse;

b. Reveal such facts to Plaintiff, the gymnastics community, the community at large, and law enforcement agencies;

c. Refuse to place NASSAR and other molesters in positions of trust and authority within Defendants USOC, USAG and DOES 1 through 500's institutions;

d. Refuse to hold out NASSAR and other molesters to the public, the community, minors, parents and law enforcement agencies as being in good standing and, trustworthy in keeping with him and his position as a team physician and authority figure;

e. Refuse to assign NASSAR and other molesters to positions of power within Defendants USOC, USAG, and DOES 1 through 500 and over minors; and

f. Disclose to Plaintiff, the public, the school community, minors, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that NASSAR had engaged in with children.

106. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's breach of their respective duties included:

a. Not making reasonable investigations of NASSAR;

b.   Issuing no warnings about NASSAR;

c.   Permitting NASSAR to routinely be alone with and in control of minors, unsupervised;

d.   Not adopting a policy to prevent NASSAR from routinely having minors and participants and members in his unsupervised control;

e.   Making no reports of any allegations of NASSAR's abuse of participants and members, or of minors prior to or during his employment and/or agency at Defendants USOC, USAG and DOES 1 through 500; and

f.   Assigning and continuing to assign NASSAR to duties which placed him in positions of authority and trust over minors, positions in which NASSAR could easily isolate and sexually abuse minors.

107.   At the time that Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 engaged in such suppression and concealment of acts, such acts were done for the purpose of causing Plaintiff to forbear on her rights.

108.   Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's misconduct did reasonably cause Plaintiff to forbear on her rights.

109.   The misrepresentations, suppressions and concealment of facts by Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were intended to and were likely to mislead Plaintiff and others to believe that Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 had no knowledge of any charges, claims or investigations against NASSAR, or that there were no other charges, claims or investigations of unlawful or sexual misconduct against NASSAR or others and that there was no need for them to take further action or precaution.

110.   The misrepresentations, suppressions and concealment of facts by Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 was likely to mislead Plaintiff and others to believe that Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 had no knowledge of the fact that NASSAR was a molester, and was known to commit wrongful sexual acts with minors, including with ALY RAISMAN.

111.   Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known at the time they suppressed and concealed the true facts regarding others' sexual molestations, that the resulting impressions were misleading.

112.   Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 suppressed and concealed the true facts regarding NASSAR with the purpose of: preventing

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Plaintiff, and others, from learning that NASSAR and others had been and were continuing to sexually harass, molest and abuse minors and others under NASSAR's and Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's control, direction, and guidance, with complete impunity; inducing people, including ALY RAISMAN and other benefactors and donors to participate and financially support Defendants USOC and DOES 1 through 500; USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's program and other enterprises of Defendants USOC, USAG, and DOES 1 through 500; preventing further reports and outside investigations into NASSAR and Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's conduct; preventing discovery of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's own conduct; avoiding damage to the reputations of Defendants USOC, USAG, PENNY and DOES 1 through 500; protecting Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's power and status in the community and the gymnastics community; avoiding damage to the reputation of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, or Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's institutions; and avoiding the civil and criminal liability of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, of NASSAR, and of others.

113. At all times mentioned herein, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, with knowledge of the tortious nature of their own and NASSAR's conduct, knowingly conspired and gave each other substantial assistance to perpetrate the misrepresentations, fraud and deceit alleged herein—covering up the past allegations of sexual misconduct lodged against NASSAR, and allowing NASSAR to remain in his position as a team physician so they could maintain their reputations and continue with their positions within the organization.

114. The Plaintiff and others were misled by Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's suppressions and concealment of facts, and in reliance thereon, were induced to act or induced not to act, exactly as intended by Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500. Specifically, Plaintiff were induced to believe that there were no allegations of criminal or sexual abuse against NASSAR and that he

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

was safe to be around children. Had Plaintiff known the true facts about NASSAR, they would have not participated further in activities of NASSAR, or continued to financially support Defendants USOC, USAG, and DOES 1 through 500's activities. They would have reported the matters to the proper authorities, to other minor participants and members and their parents so as to prevent future recurrences; they would not have allowed children, including the Plaintiff, to be alone with, or have any relationship with NASSAR; they would not have allowed children, including the Plaintiff, to attend or be under the control of Defendants USOC, USAG and DOES 1 through 500; they would have undertaken their own investigations which would have led to discovery of the true facts; and they would have sought psychological counseling for the Plaintiff, and for other children molested and abused by NASSAR.

115. By giving NASSAR the position of team physician, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 impliedly represented that NASSAR was safe and morally fit to give children care and provide osteopathic adjustments.

116. When Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 made these affirmative or implied representations and non-disclosures of material facts, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known that the facts were otherwise. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knowingly and intentionally suppressed the material facts that NASSAR had on numerous, prior occasions sexually, physically, and mentally abused minors and participants and members of Defendants USOC, USAG and DOES 1 through 500, including the Plaintiff, and knew of or learned of conduct, or should have known of conduct by NASSAR which placed Defendants USOC, USAG, and DOES 1 through 500 on notice that NASSAR had previously been suspected of felonies, including unlawful sexual conduct with minors, and was likely abusing children.

117. Because of Plaintiff's position on the outside of these organizations, and because of the status of NASSAR as a trusted, authority figure to Plaintiff and her family, ALY RAISMAN was vulnerable to NASSAR and the representations of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, both express and implied. NASSAR sought the Plaintiff out,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

and was empowered by and accepted ALY RAISMAN's vulnerability. Plaintiff's vulnerability also prevented her from effectively protecting herself from the sexual advances of NASSAR.

118. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 had the duty to obtain and disclose information relating to sexual misconduct of NASSAR.

119. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 misrepresented, concealed or failed to disclose information relating to sexual misconduct of NASSAR.

120. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew that they had misrepresented, concealed or failed to disclose information related to sexual misconduct of NASSAR.

121. Plaintiff justifiably relied upon Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 for information relating to sexual misconduct of NASSAR.

122. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, in concert with each other and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal or fail to disclose information relating to the sexual misconduct of NASSAR, the inability of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 to supervise or stop NASSAR from sexually harassing, molesting and abusing ALY RAISMAN, and their own failure to properly investigate, supervise and monitor his conduct with minor participants and members.

123. By so concealing, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 committed at least one act in furtherance of the conspiracy.

124. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

125. In addition, when Plaintiff finally discovered the fraud of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and continuing thereafter, Plaintiff experienced recurrences of the above-described injuries. Plaintiff experienced extreme and severe mental anguish and emotional distress that Plaintiff had been the victim of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's fraud; that Plaintiff had not been able to help other minors being molested because of the fraud, and that Plaintiff had not been able, because of the fraud, to receive timely medical treatment needed to deal with the problems Plaintiff has suffered and continues to suffer as a result of the sexual harassment, molestation and abuse of ALY RAISMAN.

126. In subjecting ALY RAISMAN to the wrongful treatment herein described, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiff is informed, and on that basis, allege that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of these Defendants. Plaintiff is therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants USOC, USAG, PENNY and DOES 1 through 500.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

127. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

128. Prior to and after the first incident of the Perpetrator's (NASSAR) sexual harassment, molestation and abuse of Plaintiff, through the present, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, knew and/or should have known that the Perpetrator (NASSAR) had and was capable of sexually, physically, and mentally abusing and harassing Plaintiff or other victims.

129. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 and each of them had special duties to protect the minor Plaintiff and the other participants and

members, when such minors were entrusted to Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's care by their parents. Plaintiff's care, welfare and physical custody was entrusted to Defendants USOC and DOES 1 through 500. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 voluntarily accepted the entrusted care of Plaintiff. As such, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 owed Plaintiff, a minor child, a special duty of care that adults dealing with children owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 and Plaintiff.

130. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their duties of care to the minor Plaintiff by allowing the Perpetrator (NASSAR) to come into contact with the minor Plaintiff and other participants and members, without supervision; by failing to adequately hire, supervise and retain the Perpetrator (NASSAR) whom they permitted and enabled to have access to Plaintiff; by concealing from Plaintiff, her family, and law enforcement that the Perpetrator (NASSAR) was sexually harassing, molesting and abusing minors; and by holding the Perpetrator (NASSAR) out to Plaintiff and her family as being of high moral and ethical repute, in good standing and trustworthy.

131. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their duties to Plaintiff by failing to investigate or otherwise confirm or deny such facts of sexual abuse by the Perpetrator (NASSAR), failing to reveal such facts to Plaintiff, her parents, the community and law enforcement agencies, and by placing the Perpetrator (NASSAR) into a position of trust and authority, holding him out to Plaintiff, her parents, and the public as being in good standing and trustworthy.

132. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their duty to Plaintiff by failing to adequately monitor and supervise the Perpetrator (NASSAR) and failing to prevent the Perpetrator (NASSAR) from committing wrongful sexual acts with minors including Plaintiff. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's voluminous past records of sexual misconduct by the Perpetrator (NASSAR) caused Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 to know, or

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

gave them information where they should have known, of the Perpetrator's (NASSAR) incapacity to serve as a team physician, providing for the physical care of minor females.

133. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

134. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

135. By virtue of Plaintiff's special relationship with Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's relation to the Perpetrator (NASSAR), Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 owed Plaintiff a duty to provide reasonable supervision of the Perpetrator (NASSAR), to use reasonable care in investigating the Perpetrator's (NASSAR) background, and to provide adequate warning to Plaintiff, Plaintiff's family, and minor participants and members of the Perpetrator's (NASSAR) dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of minor children, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 had a duty to protect, supervise, and monitor both the Plaintiff from being preyed upon by sexual predators, and to supervise and monitor the Perpetrator (NASSAR) such that he would not be placed in seclusion with minor children, including the Plaintiff.

136. As representatives of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, where many of the participants and members thereof are vulnerable minors entrusted to these Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, these

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's agents expressly and implicitly represented that team physicians and staff, including the Perpetrator (NASSAR), were not a sexual threat to children and others who would fall under the Perpetrator's (NASSAR) influence, control, direction, and care.

137. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, by and through their respective agents, servants and employees, knew or should have known of the Perpetrator's (NASSAR) dangerous and exploitive propensities and that the Perpetrator (NASSAR) was an unfit agent. Despite such knowledge, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 negligently failed to supervise the Perpetrator (NASSAR) in his position of trust and authority as a team physician and authority figure over children, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 failed to provide reasonable supervision of the Perpetrator (NASSAR), failed to use reasonable care in investigating the Perpetrator (NASSAR), and failed to provide adequate warning to Plaintiff and Plaintiff's family of the Perpetrator's (NASSAR) dangerous propensities and unfitness. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 further failed to take reasonable steps to ensure the safety of minors, including Plaintiff, from sexual harassment, molestation, and abuse.

138. At no time during the periods of time alleged did Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 have in place a reasonable system or procedure to investigate, supervise and monitor the team physician or staff, including the Perpetrator (NASSAR), to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minors and others in Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's care.

139. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were aware or should have been aware of how vulnerable children were to sexual harassment, molestation and abuse by teachers and other persons of authority within Defendants USOC and DOES 1 through 500's entities.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

140. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were put on notice, knew and/or should have known that the Perpetrator (NASSAR) had previously engaged and was continuing to engage in unlawful sexual conduct with minors, and had committed other felonies, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage in illicit sexual activities with Plaintiff, and others, under the cloak of the authority, confidence, and trust, bestowed upon him through Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500.

141. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were placed on actual or constructive notice that the Perpetrator (NASSAR) had molested other minors and participants and members during his employment with Defendants USOC and DOES 1 through 500. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were informed of molestations of minors committed by the Perpetrator (NASSAR) prior to Plaintiff's sexual abuse, and of conduct by the Perpetrator (NASSAR) that would put a reasonable person on notice of such propensity to molest and abuse children.

142. Even though Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known of these illicit sexual activities by the Perpetrator (NASSAR), Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 did not reasonably investigate, supervise or monitor the Perpetrator (NASSAR) to ensure the safety of the minor participants and members.

143. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's conduct was a breach of their duties to Plaintiff.

144. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and each of them, breached their duty to Plaintiff by, *inter alia*, by failing to adequately monitor and supervise the Perpetrator (NASSAR) and stop the Perpetrator (NASSAR) from committing wrongful sexual acts with minors including Plaintiff.

145. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**NEGLIGENCE *PER SE*-CONDUCT IN VIOLATION OF MANDATED REPORTING LAWS**

146. Under applicable law, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, by and through their employees and agents, were child care custodians and were under a duty to report known or suspected incidents of sexual molestation or abuse of minors to a child protective agency, and not to impede the filing of any such report.

147. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known that their team physician, the Perpetrator (NASSAR), and other staff of Defendants USOC, USAG, and DOES 1 through 500, had sexually molested, abused or caused touching, battery, harm, and/or other injuries to minors, including Plaintiff, giving rise to a duty to report such conduct.

148. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew, or should have known, in the exercise of reasonable diligence, that an undue risk to minors, including Plaintiff, existed because Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 did not comply with California's mandatory reporting requirements.

149. By failing to report the continuing molestations and abuse by the Perpetrator (NASSAR), which Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known about, and by ignoring the fulfillment of the mandated compliance with the reporting requirements, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 created the risk and danger contemplated by the applicable mandated reporting laws, and as a result, unreasonably and wrongfully exposed Plaintiff and other minors to sexual molestation and abuse.

150. Plaintiff was a member of the class of persons for whose protection applicable mandated reporting laws were specifically adopted to protect.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

151. Had Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 adequately reported the molestation of Plaintiff and other minors as required by applicable mandated reporting laws, further harm to Plaintiff and other minors would have been avoided.

152. As a proximate result of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's failure to follow the mandatory reporting requirements, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 wrongfully denied Plaintiff and other minors the intervention of child protection services. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the molestation of Plaintiff by the Perpetrator (NASSAR).

153. The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Plaintiff by the Perpetrator (NASSAR), were the type of occurrence and injuries that the applicable mandated reporting laws were designed to prevent.

154. As a result, Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's failure to comply with the mandatory reporting requirements constituted a per se breach of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's duties to Plaintiff.

155. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and each of them, breached their duty to Plaintiff by, inter alia, by failing to adequately monitor and supervise the Perpetrator (NASSAR) and stop the Perpetrator (NASSAR) from committing wrongful sexual acts with minors including Plaintiff.

156. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**NINTH CAUSE OF ACTION**
**NEGLIGENT HIRING/RETENTION**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

157. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

158. By virtue of Plaintiff's special relationship with Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's relation to the Perpetrator (NASSAR), Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 owed Plaintiff a duty to not hire or retain the Perpetrator (NASSAR), given his dangerous and exploitive propensities, which Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known about had they engaged in a reasonable, meaningful and adequate investigation of her background prior to her hiring or retaining her in subsequent positions of employment.

159. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 expressly and implicitly represented that the team staff, trainers, and team physicians, including the Perpetrator (NASSAR), were not a sexual threat to children and others who would fall under the Perpetrator's (NASSAR) influence, control, direction, and guidance.

160. At no time during the periods of time alleged did Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 have in place a reasonable system or procedure to investigate, supervise and monitor team staff, trainers, and team physicians, including the Perpetrator (NASSAR), to prevent pre-sexual grooming or sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minors, participants and members and others in Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's care.

161. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were aware or should have been aware and understand how vulnerable children were to sexual harassment, molestation and abuse by teachers and other persons of authority within the control of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 prior to Plaintiff's sexual abuse by the Perpetrator (NASSAR).

162. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were put on notice, and should have known that the Perpetrator (NASSAR) had previously engaged and

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

continued to engage in unlawful sexual conduct with minors and was committing other felonies, for his own personal gratification, and that it was, or should have known it would have been foreseeable that he was engaging, or would engage in illicit sexual activities with Plaintiff, and others, under the cloak of his authority, confidence, and trust, bestowed upon her through Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500.

163. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 were placed on actual or constructive notice that the Perpetrator (NASSAR) had molested or was molesting minors and participants and members, both before his employment within Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, and during that employment Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 had knowledge of inappropriate conduct and molestations committed by the Perpetrator (NASSAR) before and during his employment, yet chose to allow him to remain unsupervised where she sexually abused Plaintiff.

164. Even though Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 knew or should have known of these sexually illicit activities by the Perpetrator (NASSAR), Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 failed to use reasonable care in investigating the Perpetrator (NASSAR) and did nothing to reasonably investigate, supervise or monitor the Perpetrator (NASSAR) to ensure the safety of the minor participants and members.

165. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500's conduct was a breach of their duties to Plaintiff.

166. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**TENTH CAUSE OF ACTION**
**NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE**
**(Plaintiff ALY RAISMAN Against Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500)**

167. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

168. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 owed Plaintiff a duty to take reasonable protective measures to protect Plaintiff and other minor participants and members from the risk of childhood sexual harassment, molestation and abuse by the Perpetrator (NASSAR) by properly warning, training or educating Plaintiff and other about how to avoid such a risk.

169. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their duty to take reasonable protective measures to protect Plaintiff and other minor participants and members from the risk of childhood sexual harassment, molestation and abuse by the Perpetrator (NASSAR), such as the failure to properly warn, train or educate Plaintiff and other minor participants and members about how to avoid such a particular risk that the Perpetrator (NASSAR) posed—of sexual misconduct.

170. Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500 breached their duty to take reasonable protective measures to protect Plaintiff and other minor participants and members from the risk of childhood sexual harassment, molestation and abuse by the Perpetrator (NASSAR), by failing to supervise and stop employees of Defendants USOC, USAG, PENNY, PARILLA, and DOES 1 through 500, including the Perpetrator (NASSAR), from committing wrongful sexual acts with minors, including Plaintiff.

171. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**ELEVENTH CAUSE OF ACTION**
**SEXUAL BATTERY: *Civil Code* § 1708.5**
**(Plaintiff ALY RAISMAN Against DEFENDANT NASSAR)**

172. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

173. NASSAR, in doing the things herein alleged, including intending to subject Plaintiff to numerous instances of sexual abuse and harassment by NASSAR, during Plaintiff's time with USAG and USOC, beginning on or around 2010 to in or around 2012, and in or around 2015, including but not limited to instances of NASSAR groping and fondling the Plaintiff's vagina all while NASSAR acted in the course and scope of his agency/employment with Defendants, and each of them and were intended to cause harmful or offensive contact with Plaintiff's person, and did cause such harmful or offensive contact.

174. NASSAR did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff's person, and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of Plaintiff's person that would offend a reasonable sense of personal dignity.

175. Because of NASSAR's position of authority over Plaintiff, and Plaintiff's mental and emotional state, and Plaintiff's young age under the age of consent, Plaintiff was unable to, and did not, give meaningful consent to such acts.

176. As a direct, legal and proximate result of the acts of NASSAR, Plaintiff sustained serious and permanent injuries to her person, all of his damage in an amount to be shown according to proof and within the jurisdiction of the Court.

177. As a direct result of the sexual abuse by NASSAR, Plaintiff has difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over Plaintiff including teachers, and supervisors, and in confidential, business, and familial relationships, due to the trauma of childhood sexual abuse inflicted upon her by NASSAR. This inability to interact creates conflict with Plaintiff's values of trust and confidence in others, and has caused Plaintiff substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual abuse and harassment by NASSAR, Plaintiff suffered immensely, including, but not

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

limited to, encountering issues with a lack of trust, various psychological sequelae, depressive symptoms, anxiety, and nervousness.

178. Plaintiff is informed and based thereon alleges that the conduct of NASSAR was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil Code* section 3294, entitling Plaintiff to punitive damages against NASSAR in an amount appropriate to punish and set an example of NASSAR.

**THIRD CAUSE OF ACTION**
**GENDER VIOLENCE**
**(Plaintiff ALY RAISMAN Against DEFENDANT NASSAR)**

179. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

180. NASSAR's acts committed against Plaintiff, as alleged herein, including the sexual harassment and abuse of the Plaintiff constitutes gender violence and a form of sex discrimination in that one or more of NASSAR's acts would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

181. NASSAR's acts committed against Plaintiff, as alleged herein, including the sexual harassment and abuse of the Plaintiff constitutes gender violence and a form of sex discrimination in that NASSAR's conduct caused a physical intrusion or physical invasion of a sexual nature upon Plaintiff under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

182. As a proximate result of NASSAR's acts, Plaintiff is entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiff is also entitled to an award of attorney's fees and costs pursuant to *Civil Code* § 52.4, against NASSAR.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**WHEREFORE**, Plaintiff prays for a jury trial and for judgment against Defendants as follows:

**FOR ALL CAUSES OF ACTION**

1. For past, present and future non-economic damages in an amount to be determined at trial;

2. For past, present and future special damages, including but not limited to past, present and future lost earnings, economic damages and others, in an amount to be determined at trial.

3. Any appropriate statutory damages;

4. For costs of suit;

5. Punitive damages, according to proof, though not as to the Negligence Causes of Action (Causes of Action 7, 8, 9, and 10);

6. For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

7. For attorney's fees pursuant to California *Code of Civil Procedure* sections 1021.5, *et seq.*, or as otherwise allowable by law;

8. For declaratory and injunctive relief, including but not limited to court supervision of Defendants USAG, and USOC; and

9. For such other and further relief as the Court may deem proper.

Dated: February 28, 2018

**MANLY, STEWART & FINALDI**

By: John C. Manly
JOHN C. MANLY, Esq.
Attorneys for Plaintiff ALY RAISMAN

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**DEMAND FOR JURY TRIAL**

Plaintiff ALY RAISMAN hereby demands a trial by jury.

Dated: February 28, 2018

**MANLY, STEWART & FINALDI**

By: John C. Manly
JOHN C. MANLY, Esq.
Attorneys for Plaintiff ALY RAISMAN

# EXHIBIT "A"

EXHIBIT 1
053

10-Nov-2005 16:58 From-3172371300 T-172 P.002/010 F-624

USA GYMNASTICS

October 11, 1999

Mr. William J. Hybl, President
Mr. Dick Schultz, Executive Director
Mr. Scott Blackmun, Deputy Executive Director
and General Counsel
United States Olympic Committee
One Olympic Plaza
Colorado Springs, CO 80909

Dear Bill, Dick and Scott:

I am reluctant, given the extraordinary demands being placed on each of you these days, to bring a matter directly to your attention. Unfortunately, I have concluded that I must. The recent experiences of USA Gymnastics with the USOC's Membership and Credentials Committee has been so troubling for our organization, and for me personally, that I feel compelled to share it with you.

On September 7, our Chair, Sandy Knapp, received a letter signed by Membership and Credentials Chairman, Steve Sobel, informing us that "USAG is not in compliance with National Governing Body and membership requirements." This communication is, in our view, the inevitable result of a fundamentally flawed process. Let me be direct; the professional and volunteer leadership of USA Gymnastics believes that the USOC's Membership and Credentials' audit process is badly broken and, perhaps more importantly, are deeply concerned by the apparent indifference to the welfare of young children manifest in the Committee's actions.

There is much about the accomplishments of USA Gymnastics during the past two decades in which we take great pride. Perhaps nothing gives us a greater sense of satisfaction, however, than our national leadership among sports organizations in attempting to protect young athletes from coming in contact with individuals who are unfit to have the honor of being called "coach". While other organizations have chosen to ignore the problem of child abuse in youth sports (see enclosed copy of recent cover story from the September 13 edition of *Sports Illustrated*), USA Gymnastics has investigated every charge and processed each complaint in an effort to protect the children who put their faith in us. To date we have devoted hundreds of thousands of dollars to this effort.

Pan American Plaza • 201 South Capitol Avenue • Suite 300 • Indianapolis, IN 46225 • Phone: 317-237-5050 • Fax: 317-237-5069

EXHIBIT 7
PENGAD 800-631-6989

Believing this to be an area in which there is no margin for error, USA Gymnastics established its rules and procedures with a single clear priority in mind – serving the best interests of the young people in our sport. In order to do that, we established procedures that allowed the president of USA Gymnastics to suspend immediately (pending a prompt resolution of the underlying allegation) any individual charged with a felony involving a statute designed to protect children (e.g. child molestation, statutory rape, battery or assault against a minor), and further allowed the president to deny or rescind the membership of any individual who was convicted or pleaded guilty to a felony. We believed when we created those rules (and continue to believe today) that our approach was the proper one. The Membership and Credentials Committee disagreed with us.

After extensive discussions and correspondence with representatives of the Committee by me and Sandy Knapp, the matter was referred to Jack Swarbrick and Scott. Following his discussions with Scott, Jack recommended to us that USAG agree to forego our ability to suspend individuals who had been charged with a crime, but retain our ability to deny the privilege of membership where the judicial process had resulted in a felony conviction. This was not a compromise we were thrilled with (it meant that an individual who is arrested for child molestation and freed on bond can go back to the gym and coach the next day), but one we were prepared to live with in the interest of getting the matter behind us. Remarkably, despite the good faith efforts of two people – Scott and Jack – infinitely more qualified to evaluate the situation than any member of the Membership and Credentials Committee, that Committee rejected this approach. What is particularly stunning about the Committee's decision is the nature of its rejection. We did not receive a measured response aimed, for example, at trying to distinguish cases involving a felony conviction where the nexus between the conviction and potential risk to children was tenuous, but rather were told merely that "a hearing must be provided for in all situations and... USAG could not except from the hearing process, and impose an immediate suspension on, those individuals who has been subjected to a prior non-USAG judicial or administrative hearing" (emphasis added).

In hindsight, I suppose we should not have been surprised by the position taken by the Committee. During the now nearly two years these discussions have dragged on, USA Gymnastics has repeatedly been urged by members of the Committee to resolve the problem by conducting bare-bones telephonic hearings immediately upon receipt of a complaint. This exultation of form over substance is all too typical of the predisposition of this Committee. More importantly, it also ignores the various reasons why such an approach is untenable and poses significant risk to our organization. As the USOC learned in 1994, the intersection between the criminal justice system and the Amateur Sports Act can be an especially treacherous location.

I suspect that if USAG Gymnastics invested additional time and money, we could cobble together some sufficiently muddled amendment to our Bylaws that would satisfy the Membership and Credentials Committee. That is, however, a use of Federation resources I am no longer prepared to allow. Simply stated, we have no intention of dealing further on this matter with representatives of the Membership and Credentials Committee.

We welcome the opportunity to address this matter in other forums acceptable to the three of you, but in inviting that resolution want you to know that we are more resolute than ever in our determination to do whatever it takes to protect the children we serve.

In anticipation of future discussions, let us be absolutely clear about our position. USA Gymnastics has no reluctance to provide hearings to any athlete or professional member in circumstances where hearings are appropriate. In fact, we believe our grievance and member discipline procedures are more refined, and the number of hearings we have conducted in the past ten years is greater, than those of almost any other national governing body. All we want to be certain of here is that: 1) we do not have a circumstance where a panel of three volunteers is asked to reconsider and independently evaluate the factual circumstances that give rise to a felony conviction in a court of law of competent jurisdiction in this country; and 2) we do not allow the occasion of a delay in the timing of a hearing (regardless of the legitimate factors which may contribute to that delay) to put any USA Gymnastics' member gymnasts in a position where we believe their personal safety to be at risk. From our perspective, any risk is an unacceptable risk when it comes to protecting young athletes from abuse.

While the circumstances of this particular issue have undeniably inflamed the passions of those of us responsible for leading USA Gymnastics, these unhappy circumstances are all too indicative of our experiences with this Committee in recent years. In brief, I believe that this Committee has fundamentally lost its way and ought to be reconstituted or its purpose redefined. What ought to be a positive experience of helping national governing bodies conduct a self-audit designed to make them better organizations has turned into a hyper-technical review of governance documents by individuals whose qualifications to conduct such a review are tenuous at best.

Properly conducted, we believe the Membership and Credentials Committee review could be a positive and productive experience. As the Committee which reviews the core activities of each national governing body, the Membership and Credentials Committee is in a position to serve as a valuable information source for what is and isn't working in our industry. Unfortunately, they do not view that as their mission. So we come to the circumstance we have here. The Membership and Credentials Committee reviews national governing bodies who, regrettably, appear to have chosen to ignore the issue of coaching misconduct (but have acceptable hearing procedures in place) and decrees these governing bodies to be in compliance. Yet the national governing body who has taken the lead in this country in moving to protect its athletes against physical, sexual and emotional abuse, and who has provided its procedures for doing so in great detail, is found to be out of compliance because we refuse to conduct a hearing to determine whether an individual who has been convicted of child molestation ought to be allowed to be a professional member of our association. That is a process and a result that no longer deserves the support of the Olympic family.

Again, my apologies for having to add to your already crowded agendas, but, as I hope you can now appreciate, this is a matter about which we feel passionately. It is a matter that goes to the core of the relationship between the national governing body and its

athletes, and so is a matter that ought to be of central importance to the USOC. As USA Gymnastics' experience demonstrates, this is not an issue that can be wished away. The USOC can either position itself as a leader in the protection of young athletes or it can wait until it is forced to deal with the problem under much more difficult circumstances. It is my sincere hope that the USOC will seize the opportunity presented by this dispute to follow the former course of action.

Thank you in advance for you attention to this matter.

Sincerely,

Robert V. Colarossi

Robert Colarossi

Enclosure

CC: Sandy Knapp
Jack Swarbrick
Michelle Dusserre-Farrell
Gary Johansen
Steve Sobel

# EXHIBIT "2"

**ASSIGNED TO THE 278th JUDICIAL DISTRICT COURT**

**INDICTMENT NO. 28737**

**__ PER BOND SCHEDULE __ BOND RECOMMMENDATION $ 20,000 surety HRR**

**STATE OF TEXAS VS. DEBRA VAN HORN**

**CHARGE: 22.011(a)(2) - SEXUAL ASSAULT CHILD/SECOND DEGREE FELONY**
**OFF CODE: 11990002 TRN NO.:**
**PID NO.: 3314372 - CONTROL NO.: 2018-00791** 800

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS,**

THE GRAND JURORS, duly selected, organized, sworn, and impaneled as such for the County of Walker, State of Texas, at the January Term, A.D. 2018, of the District Court for said County upon their oaths present in and to said Court, that on or about the 1st day of January, 2012, and anterior to the presentment of this indictment, in the County and State aforesaid DEBRA VAN HORN did then and there, acting as a party with one or more individuals, intentionally or knowingly cause the penetration of the female sexual organ of Ruth (a pseudonym) by defendant's finger, without the consent of Ruth (a pseudonym).

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

[signature]
Foreman of the Grand Jury

FILED
TIME 11:45
29 DAY OF June 2018
ROBYN FLOWERS
District Clerk, Walker County
By B Roberts Deputy

EXHIBIT 2
001

**INDICTMENT NO.**____________________

**STATE OF TEXAS VS. Debra VanHorn**

**OFFENSE: SEXUAL ASSAULT CHILD**

**Race:** White **Gender:** Female **DOB:** 08/13/1954

**HT:** **WT:** Lbs. **Hair Color:**

**Eye Color:** **DL:**

**Agency:** **Agency #:** **State ID #:**

TRUE BILLED UPON THE INFORMATION OF Steve Jeter

Tom Bean

OTHER PENDING INDICTED CASES AGAINST DEFENDANT?

____ YES ____ NO

IF YES, CAUSE #'S ____________________________________

IS THIS A RE-INDICTMENT?

___ YES ___ NO

IF YES, PREVIOUS CAUSE # __________

NAME OF CO-DEFENDANT(S), IF ANY, ***NOT*** NAMED IN INDICTMENT.

| | Name | CAUSE NO. | COURT |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |
| (5) | | | |

SIGNED on this 29th day of June, 2018.

______________________________
Attorney for the State of Texas

EXHIBIT 2
002